# Richmond.

WOODSON v. WOOD.

FEBRUARY 2d, 1888.

1. PARTNERSHIP—*Dissolution—Power of partner.*—After dissolution no partner can create a cause of action against the other partners except by a new authority conferred upon him for that purpose, whether the consideration be a pre-existing debt of the firm, or any auxiliary consideration that might prove beneficial to them. *Bell* v. *Morrison,* 1 Peters, 352.

2. IDEM—*In liquidation—Notice.*—Indorsement on a negotiable note of the words "*in liquidation*" has often been held sufficient to give notice of the dissolution of the partnership, and no recovery can be had on such indorsement against the other partners.

3. IDEM—*Instructions—Case at bar.*—P. & W. dissolved partnership. Notice of dissolution stated that either partner was authorized to use the firm name in liquidation. Later, P. took from a debtor of the firm, in settlement, a negotiable note payable "to P. & W. in liquidation." This note P. transferred to plaintiff by a like indorsement. At trial the jury were instructed that W. must prove that the note was not used for the firm purposes, else they should find for plaintiff:

HELD:

Error.

Error to judgment of circuit court of Prince Edward county rendered March 5th, 1885, in an action of debt wherein Richard Wood was plaintiff, and Charles R. Palmore, John R. Palmore and B. B. Woodson, late partners in the firm and style of Palmores & Woodson, were defendants. The judgment was in favor of the plaintiff, and the defendant B. B. Woodson, obtained a writ of error and *supersedeas.* Opinion states the case.

*J. P. Fitzgerald, J. O. Reynolds,* and *S. T. Coleman,* for the plaintiff in error.

*P. W. McKinney,* for the defendant in error.

Lacy, J., delivered the opinion of the court.

This is a writ of error to a judgment of the circuit court of Prince Edward county, rendered at the March term, 1885. The case is as follows: The mercantile firm of Palmores & Woodson, doing business at Ca Ira, in Cumberland county, on the 14th of October, 1871, was dissolved by mutual consent, and notices thereof published in "The New Commonwealth," a newspaper published in Farmville, a town in the vicinity, as follows:

"Notice. The business heretofore existing under the firm and style of Palmores & Woodson is this day dissolved by mutual consent. Either of the partners is authorized to use the name of the firm in liquidation.

PALMORES & WOODSON."
Ca Ira, Cumberland, *October* 11, 1871.

"Dr. C. R. Palmore and John R. Palmore, Jr., will continue the business at Ca Ira, under the firm and style of C. R. Palmore & Brother."
"Octo. 19–2w."

Subsequently, on the 18th day of April, 1872, George William Palmore, a brother of C. R. and J. R. Palmore, made his note, payable to "Palmores & Woodson in liquidation," for $711 60, at ninety days, payable at the Commercial Savings Bank, at Farmville, Virginia, which note was indorsed by the Palmores, "Palmores & Woodson in liquidation," and negotiated. In April, 1876, the defendant in error, Richard Wood,

instituted suit on this note, claiming to be the owner thereof, against B. B. Woodson, C. R. Palmore, and J. R. Palmore, late merchants and partners, trading under the name and style of Palmores & Woodson, seeking to hold the late firm responsible because of the indorsement thereon by the Palmores after the dissolution of "Palmores & Woodson in liquidation." The Palmores made no defense, and as to them judgment went by default, but Woodson defended the action, and after the suit was removed to Farmville, the county seat of Prince Edward county, the trial was had on the defenses of Woodson, which were first, *nil debet,* and two special pleas under oath. "*First,* That the indorsement 'Palmores & Woodson in liquidation' was made by the Palmores not in the scope of the business of the late firm, nor in the course thereof, not to carry on nor to aid the carrying on the said business, nor for any purpose connected therewith, but as an accommodation to George W.. Palmore without the knowledge or consent of said Woodson, and after the .firm of Palmores & Woodson had been dissolved, and had ceased to exist, and had ceased to do business, and after notice thereof had been published. *Second,* That he did not sign the said indorsement, nor authorize any other person to sign the said name of Palmores & Woodson for him, and that at the time the note was made and indorsed, he was not a member of such alleged firm of Palmores & Woodson." At the trial, the plaintiff offered no evidence except the note. The defendant proved the dissolution of the firm in October, 1871, and produced the notice published in the newspaper of such dissolution as set forth above, and proved that notice was posted at the former place of business in Ca Ira to the same effect; that the indorsement made on the note, was, he believed, made by one of the Palmores, who had so indorsed the note without his knowledge and consent, and that he knew nothing of what disposition was made of said note, nor the proceeds arising thereon, and did not know for what purpose it was given. This was not controverted nor denied by the plaintiff,

who claimed the right to recover on the evidence afforded by the note, and asked for and obtained from the court the following instruction: "The court instructs the jury that the presumption of law is that a note executed by a firm is for partnership purposes, and within the scope of the partnership business, if the note was given while the partnership was in existence, and that if the notice of dissolution authorized the partners to use the name of the firm in liquidation, and that the note in question shows upon its face that it was so indorsed, *it devolves upon the defendant to show that it was not used for partnership purposes;* and, unless they believe from the evidence that it was not used for partnership purposes, they must find for the plaintiff,"—and gave certain instructions not objected to, asked for by the defendant, which are not claimed to be erroneous. But the defendant excepted to the foregoing instruction asked for by the plaintiff and given by the court. Verdict was rendered for the plaintiff for the amount claimed, which verdict the court refused to set aside at the motion of the defendant, who again excepted, and judgment being rendered in accordance with the verdict, the defendant brought the case here by writ of error.

The first assignment of error to be considered here is the action of the court in giving the said instruction, and in refusing to set aside the verdict for error appearing in the said instruction. Nothing is better settled than that the power of a partner ceases upon the dissolution of the firm, and the surviving partners or ex-partners can enter into no contract which will bind the estate of the deceased (in case of a surviving partner) or the other members of the firm in the case of ex-partners, except such as is necessary or appropriate in settling the affairs of the concern. "Dissolution operates as a revocation of all authority for making new contracts. It does not revoke the authority to arrange, liquidate, settle, and pay those created." "The power of a surviving partner does not extend to giving a note, drawing a check, or accepting a bill in the

firm's name." 1 Daniel, Neg. Inst., § 370; *Darling* v. *March*, 22 Me., 184; *Gale* v. *Miller*, 54 N. Y., 536; *Morrison* v. *Perry*, 18 N. Y., 33.

Where a note is issued by a partner after dissolution, it will not bind the other partners, even though given for a debt due by the firm. 1 Daniel, Neg. Inst., § 371; *Whitman* v. *Leonard*, 3 Pick., 177; *Bank* v. *Humphreys*, 1 McCord, 388; *Haddock* v. *Crocheron*, 32 Tex., 276. If authorized verbally or in writing one ex-partner may bind the firm, after dissolution, *as a party* to a bill or note, but authority to settle or close up the business of the firm does not imply authority to one partner after dissolution to give a note in the name of the firm for the firm's debt, or to renew one given before the dissolution. Nor will authority to give or renew a note be implied by authority "to settle business of the firm and sign its name for that purpose;" "to use the name of the firm in liquidation of past business;" "to settle all demands in favor of or against the firm;" or by the use of any similar expression. 1 Daniel, Neg. Inst., § 373; *Martin* v. *Kirk*, 2 Humph., 529; *Lockwood* v. *Comstock*, 4 McLean, 383. The case of *Haddock* v. *Crocheron*, *supra*, decided in the supreme court of Texas, in 1869, is a case much in point. In that case Justice Lindsay, speaking for a unanimous court, said: "There is really but a single question presented for our consideration by this record, and that is, can one partner, * * * after a dissolution * * * of the partnership, by a novation general, or by a new engagement with his creditor, in consideration of being discharged and released from a liability contracted during the existence of the firm, bind the retired partner by such new engagement or new obligation? This is not now an open question in this State." In *Speake* v. *White*, 14 Tex., 368, it was decided that "the acknowledgment of an antecedent indebtedness by one partner, after dissolution, did not bind the firm."

In *White* v. *Tudor*, 24 Tex., 641, it is even held that a general authority to one partner, after dissolution, to settle the

business of the firm does not warrant him to "give a note in the name of the firm for a firm debt, or to renew one given before the dissolution." This general concession and the authoritative decisions upon the vital point in this case supersede the necessity of investigating the propriety of the exclusion of the testimony in relation to the entries of the creditor. For the proof, if it had been admitted, would only have conduced to prove that the partner had executed new notes, after dissolution, for an existing obligation of the firm which would not be binding upon the retired partner, according to the decisions of this court. Nor does the fact of the want of knowledge of the dissolution in the creditor, up to the time of giving the new obligation, alter the force and effect of this new arrangement, since the knowledge was necessarily brought home to him at the time of the arrangement by the contracting partners signing the firm name "*in liquidation.*" In the case of *Wilson* v. *Forder*, 20 Ohio, St., 95, decided in the supreme court of Ohio in 1870, Judge White said: "After the dissolution of the firm neither partner was authorized to renew the firm notes. There was no express authority, and the law does not imply it;" citing *Palmer* v. *Dodge*, 4 Ohio, St., 21. In that case Judge Ranney, in an elaborate and able opinion, reviews this subject. He says: "As the dissolution finds the engagements of the company, they must remain until liquidated and paid, unless all the partners consent to come under new engagements or otherwise change their character." Speaking of the following words appended to the notice of dissolution, to-wit: "the remaining unsettled business of the firm will be adjusted by E. Short, who is hereby authorized to close all business transactions of the late firm," he said: "There is not one word in it to indicate an intention to confer upon him the authority to create new obligations. He is therefore remitted to his power as a partner; and, considered in that light, it is very clear he possessed no such authority. The elementary books

and adjudged cases speak an almost uniform language upon the subject."

In the case of *Abel* v. *Sutton*, 3 Esp., 110, which is cited as the leading case on this subject in England, a promissory note due to the firm at the time of the dissolution, was afterwards indorsed in the name of the firm by a partner *who had authority to settle and liquidate the partnership effects*, of which notice had been given in the Gazette, suit was brought by the endorsee to charge all the members of the firm as indorsers of the note. For the plaintiff it was insisted—*First*, that if the note existed before the dissolution, a partner, having authority to settle and liquidate the partnership accounts, had a right to put the partnership name upon it, and that a *bona fide* holder might resort to all the partners; *second*, that if the partner indorsing raised money by the sale of the note, and applied it in payment of the partnership debts, it was money had and received to the use of the partners, and all would be liable." Lord Kenyon most emphatically denied both of these propositions, and held that a recovery could not be had on the indorsement or on the money counts against any but the indorsing partner. He says: "To contend that this liability to be bound by the acts of his partner extends to time subsequent to the dissolution, is in my mind a most monstrous proposition. A man in that case can never know when he is to be at peace and retired from all the concerns of the partnership." In that country, from that day to this, there has been a constant and most decided leaning against giving effect to new contracts, notes, or other instruments made by the partner for the firm, after dissolution, as will be seen by the cases of *Pindar* v. *Wilks*, 1 Marsh., 248; *Kilgore* v. *Finleyson*, 1 H. Bl., 155. See *Hackley* v. *Patrick*, 3 Johns., 536; *Martin* v. *Walton*, 1 McCord, 16; *Sandford* v. *Nickles*, 4 Johns., 227; *Bank* v. *Norton*, 1 Hill, 572. In that case the court, after reviewing the cases of *Abel* v. *Sutton*, *Martin* v. *Walton*, and *Hackley* v.

*Patrick,* said: "These were all cases of express authority to settle after dissolution, yet the first holds that the power did not extend to indorsing a partnership note, even *in liquidation* of the partnership debt. In the second it was denied to be a power of renewal; and in the third a power of adjustment was denied to operate as an authority to sign an account stated. In the case at bar an express power to use the name is given, but it is confined to the purposes of adjustment, (settlement.) The words did not work an extension of power in any respect beyond the form of doing the business." The case of *Parker* v. *Macomber,* decided by the supreme court of Massachusetts, and reported in 18 Pick., 509, is to the same effect; also the case of *Perrin* v. *Keene,* 19 Me., 357, and *Darling* v. *March,* 22 Me., 184. In the supreme court of the United States, in *Bell* v. *Morrison,* it was said: "The light in which we are disposed to consider this question is that, after a dissolution of a partnership, no partner can create a cause of action against the other partners except by a new authority communicated to him for that purpose. It is wholly immaterial what is the consideration which is to raise such cause of action; whether it be a supposed pre-existing debt of the partnership, or any auxiliary consideration which might prove beneficial to them, unless adopted by them, they are not bound by it." 1 Pet., 352. See, also, *Woodford* v. *Dorwin,* 3 Vt., 82, and *Long* v. *Story,* 10 Mo., 636. In this last case the court said: "The principle is well established that, after the dissolution of a partnership, one partner cannot bind the other by drawing a note in the partnership name, unless he has a *particular* power vested in him for that purpose. A general authority to settle the partnership concerns does not create such a power." In *Humphries* v. *Chastain,* 5 Ga., 166, it was said "that, after the dissolution of a copartnership, one copartner cannot bind the other by indorsing a note in the copartnership name, is, we think, well settled both upon principle and upon authority,

and that the note so indorsed is in payment of a debt due by the copartnership makes no difference."

In the case of *Sandford* v. *Nickles*, *supra*, the court said, per Yates, J.: "The decided manner in which Lord Kenyon (in *Abel* v. *Sutton*, *supra*) denies the right of one partner, after dissolution of the partnership, to indorse bills given before, if he even had authority to settle the partnership accounts, induces me to believe the doctrine is settled. It would be a peculiar hardship to put a partner retired from the whole concern so completely in the power of the other as to charge him by negotiating bills given during the partnership. This power being denied, it follows that they must all join in the transfer of a bill negotiated after the dissolution for the purpose of vesting the title in the indorsee." In the case of *Fellows* v. *Wyman*, 33 N. H., 355, Chief Justice Perley said: "One partner, after dissolution, may sell and dispose of the partnership property for the benefit of the partnership, and to wind up its concerns, but, as a general rule, he cannot create any new contracts or obligation binding on the partnership, and the indorsement of securities belonging to the firm falls under this general rule. The cases which hold that one partner, after dissolution, cannot indorse a note or bill, have been determined with a view of protecting one partner from a responsibility which might be created against him in consequence of the negotiation of the bill or note, and an authority to settle the partnership business does not authorize a partner, after dissolution, to indorse the negotiable paper of the firm, though, with such an authority, he may transfer a note payable to bearer by delivery." In the case of *Myatts* v. *Bell*, 41 Ala., 231, Justice Byrd said: "By that law (the law of partnerships) one partner, after the dissolution of the firm, has no authority in law to renew a promissory note made by the partnership by signing the partnership name, and thereby bind the partners; but it would be the note of the partner executing it, and binding on

him;" citing *Cunningham* v. *Bragg*, 37 Ala., 436; and Pars. Part., 391, and references *t* and *u.* Mr. Story says, (Story Prom. Notes, § 125): "But where the partnership is dissolved during the lifetime of the partners, neither partner can afterwards indorse a note payable to the firm in the name of the firm;" citing Story, Partn., § 323 of the last named work it is said: "None of the partners can create any new contracts or obligations binding upon the partnership; none of them can buy or sell or pledge goods on account thereof; none of them can indorse or transfer the partnership securities to third persons, or in any other way make their acts the acts of the partnerships; in short, none of them can do any act or make any disposition of the partnership property or funds in any manner inconsistent with the primary duty now incumbent upon all of them of winding up the whole concerns of the partnership;" citing Gow., Partn., c. 5, § 2, p. 230; *Crawshay* v. *Collins*, 15 Ves., 218, 226, opinion of Lord Eldon. In Byles, on Bills, marg., p. 52, it is said: "After a dissolution, and due notice thereof, the ex-partners become tenants in common of the partnership effects, and their authority as mutual agents is at an end. One partner cannot, therefore, indorse in the name of the firm a bill which belonged to the firm, but all must join, though the ex-partner indorsing has authority to settle the partnership affairs." "I even doubt much," says Lord Kenyon, "if an indorsement were actually made on a bill or note before the dissolution—but the bill or note were not sent into the world until afterwards—whether such indorsement would be valid." *Abel* v. *Sutton, supra.* Citing *Lockwood* v. *Comstock, supra,* and the case in this court of *Parker* v. *Cousins*, 2 Gratt., 372. In 2 Collyer, on Partn., § 541, it is said: "When a *bona fide* dissolution has taken place, the retiring partners are not to be bound by instruments negotiated in the name of the original firm after such dissolution, even though they are negotiated by a partner authorized to settle the partnership concerns." "After dissolution, no valid draft, acceptance, or indorsation can be made by the firm, and

it is no authority to do so if any one partner is in the notice empowered to receive and pay the debts of the company. The indorsation, draft, or acceptance must be done by all the partners or by one *specially* empowered to act for *them*."

The instruction given by the circuit court and excepted to is in direct opposition to these well settled principles. The jury were instructed that the words "in liquidation" put the burden of proof upon the defendant to show that the note was not used for partnership purposes, and that, unless they believed that it was not used for partnership purposes, they must find for the plaintiff. The note showed that it was given after the dissolution of the firm. It was dated long afterwards, and the indorsement thereon, "*in liquidation*" has been often held to give notice of the dissolution of the partnership, and, that being so, it is settled law that no recovery could be had *thereon* against the other partner, and the jury should have been so instructed, and a verdict and judgment rendered for the defendant Woodson and the said suit as to him dismissed.

The judgment of the said circuit court will therefore be reversed and annulled.

JUDGMENT REVERSED.