## Richmond.

## FIRST N. BANK OF ALEXANDRIA V. PAYNE & CO.'S ASSIGNEES.

### March 21st, 1889.

1. PARTNERSHIP—*Death of partner—Powers of survivor.*—Firm is dissolved by death of partner. Survivor entitled to take possession of the assets, and settle up, but not to make a contract for the firm, except such as is necessary to settle the affairs.

2. IDEM—*Banks and banking—Case at bar.*—Before checks drawn on defendant firm and for collection sent it by plaintiff bank, were received, former was dissolved by death of partner. Surviving partner charged the checks to drawers, and credited the amount to plaintiff bank on the firm-books ;

HELD :

>   Survivor had no power to do so. He should either have returned the checks or remitted the proceeds.

3. IDEM—*Assignment—Insolvency.*—Where the money represented by the checks was afterwards assigned by survivor to assignees for benefit of creditors, but was easily traceable on the books, no checks having been drawn upon the credit of the plaintiff bank ;

HELD :

>   The plaintiff bank is entitled to reclaim the money from the assignees.

Appeal from decree of circuit court of Fauquier county, rendered January 11th, 1887, in a chancery suit wherein the First National Bank of Alexandria was complainant, and James Keith, surviving partner of the late firm composed of himself and Charles E. F. Payne, doing business as bankers in the name of Payne & Co., and F. T. Scott, A. D. Payne and Albert Fletcher, assignees of said firm, were defendants. The decree being adverse to the complainant, it appealed. Opinion states the case.

*S. F. Beach,* for appellant.

*Burke & Scott,* and *A. D. Payne,* for appellees.

LACY, J., delivered the opinion of the court.

In May, 1885, the appellant company, the First National Bank of Alexandria, filed its bill against the appellees, the assignees of Payne & Co., wherein it is set forth that the said the First National Bank of Alexandria was a banking association located in the city of Alexandria, Va., which, for many years prior to the 9th day of January, 1885, had had for their correspondents a banking firm—Payne & Co.—composed of Charles E. F. Payne and James Keith, their place of business being in Warrenton, in the county of Fauquier, Va., where also were their private residences, and that the said the First National Bank of Alexandria was the correspondent of Payne & Co. in Alexandria. That the relations between the two banking concerns were such as are usual between corresponding banks and bankers keeping running accounts with each other. Collections in Warrenton for the First National Bank of Alexandria were made by Payne & Co., and collections in Alexandria for Payne & Co. were made by the First National Bank of Alexandria, each placing to the credit or debit of the other the amount respectively collected or paid for such other, and from time to time settling balances as they should be ascertained. That during the day of January 8, 1885, the appellant received from its other correspondents and customers divers checks drawn on Payne & Co., to wit: sixteen checks, amounting in the aggregate to $929.13; also three drafts on Fletcher & Bro., of Warrenton, aggregating $81.03. These several checks and drafts, in anticipation of their payment and collection, were, when received by the appellant, credited to the respective parties from whom they were received. At the same time, in anticipation likewise of their payment and collection by and through Payne & Co., the

checks and drafts were also charged to the account of the said Payne & Co., thus increasing the previous apparent balance due from the said Payne & Co. to the appellant. These credits and charges, respectively, were subject to cancellation by cross-entry, according to the established and well-known usage of business, in case the checks and drafts should be dishonored when forwarded for payment. Said checks and drafts were on the same day, in the evening (January 8th), inclosed in a letter to Payne & Co., with the usual direction to place the proceeds to the credit of the First National Bank of Alexandria. That on the early morning of the 9th, before the commencement of the business hours of that day, and before the arrival of the letter in Warrenton, the firm of Payne & Co. was dissolved by the death of Payne. That the condition of the firm at that time was one of deep insolvency—a condition which had existed for not a short time previously, though wholly unknown or suspected by the First National Bank. The letter, with the stated inclosures, reached the bank on the 9th, when, without direction from any source, as if no legal interruption had occurred to the receipt of deposits as usual by the firm, the clerk of Payne & Co. paid the checks by charging them against the accounts of the drawers, and placed the proceeds of the same ($929.13) to the credit of the First National Bank of Alexandria upon the books of the dissolved firm. That on the 12th of January following, James Keith, the surviving partner of Payne & Co., made an assignment to A. D. Payne, R. T. Scott and Albert Fletcher, in trust for the benefit of the creditors of the late firm, without preference. That the said assignees had taken possession of the assets of the said firm of Payne & Co., among which was the said sum of $929.13, which came to the hands of the said assignees with notice of above-mentioned facts. It is claimed that the death of Charles E. F. Payne, and the consequent dissolution of his firm, terminated *eo instanti* the relations previously subsisting between the said firm of Payne & Co. and the First National Bank. That all pending direction by either to the other, look-

ing to further transactions, and made in contemplation of the continued existence of those relations, was thereby revoked. That, under the circumstances existing on the arrival of their letter, either the checks should have been returned unpaid to the First National Bank, to be by them returned to the respective parties from whom they had been received, or, if paid, that the proceeds of their payment should have been remitted to the First National Bank for remittance by them in turn to the parties by whom they had been drawn. That there was no authority of law, nor by said First National Bank of Alexandria, warranting the deposit of the proceeds of said checks with the dissolved firm, and that, being so deposited, they continue to be, and are now, in equity, the moneys of the First National Bank of Alexandria, whether in the hands of the surviving partner of Payne & Co., or their said assignees, the appellees.

There was no answer, but the facts were agreed, and it was laid before the commissioner in chancery appointed for the purpose as a case agreed that the letter from the First National Bank of Alexandria containing these checks came to hand on the 9th of January, after the dissolution of the firm by the death of Payne; that but one check was paid over the counter of Payne & Co. that day, but that their usual business with correspondents was transacted that day; that at 3:15 P. M., James Keith, the surviving partner, wired the Alexandria Bank as follows: "Owing to the death of Charles Payne, the banking-house of Payne & Co. has closed its doors, and goes at once into liquidation.—James Keith." At 4:05 P. M. of the same day the following telegram was received by Keith: "If we send letter to-day, will it have attention as usual? Can you remit balance? Shall I come up in the morning?—C. R. Hooff, cashier." At 5:25 P. M. it was answered as follows: "Do not send letter. Will remit balance to-morrow.—Payne & Co." At 10 A. M. of the 10th, the foregoing was followed by this: "Are unable to remit balance, as promised yesterday.—James Keith, Surviving Partner." The Alexandria bank responded on the 12th of Jan-

uary as follows, by letter: " *Judge James Keith, Surviving Partner, etc.*—Dear Sir: Our inclosures of the 8th instant—ten hundred and ten dollars and sixteen cents—received by you on the 9th, after going into liquidation, were placed to our credit, when, under the circumstances, the amount should have been remitted or the inclosures returned. We beg, therefore, that this error may be rectified before the matter becomes involved in possible complications.—I am, with respect, yours, etc., Chas. R. Hooff, Cashier." The assignees—Fletcher, Payne and Scott— replied to this, denying the right claimed, and declining the request. The matter was so referred to a master commissioner, who made report against the claim of the First National Bank of Alexandria as to the $929.13 aforesaid, and reported the said sum to be a part of the social assets of Payne & Co.; that " it is contended by the bank that he was not authorized to pay the checks and place the amounts to the credit of the bank on the books of the firm of Payne & Co. It might be said with equal force that he was not authorized to even pay the checks or collect them, yet, as seen above, this last is admitted. In your commissioner's opinion his authority in the premises was such as the law confers on a surviving partner to complete the transaction begun with his firm before its dissolution ;" and, further, that the actions of the bank (the First National Bank of Alexandria) constitute on their part a complete satisfaction of what Keith had done for the late firm, and the First National Bank was as much bound thereby as if they had expressly authorized him so to act. The court confirmed the commissioner's report, and decreed against the claim set up by the First National Bank of Alexandria; whereupon the said First National Bank of Alexandria brought the case here by appeal.

The controversy in this case is within a very narrow compass. It is mutually conceded that the death of any one member of a firm operates as a dissolution thereof as between all the members, and that on such dissolution the survivor has the right to take possession of the co-partnership assets and settle up the

affairs of the joint concern; and it may be stated, as a settled proposition, that the power of a partner to make a contract for the firm ceases upon the dissolution of the firm, and the surviving partners or ex-partners can enter into no contract which will bind the estate of the deceased partner, except such as is appropriate and necessary in settling the affairs of the concern. Dissolution operates as a revocation of all authority for making new contracts; as dissolution finds the engagements of the company, they must remain until liquidated and paid. *Woodson* v. *Wood,* 84 Va. 478, and cases cited. As was said by Lord Kenyon (*Abel* v. *Sutton,* 3 Esp. 112): "To contend that this liability to be bound by the acts of his partner extends to a time subsequent to the dissolution, was, in his mind, a most monstrous proposition. A man in that case could never know when he was to be at peace, and retired from all concerns of the partnership." Mr. Justice Story said, in *Bell* v. *Morrison,* 1 Pet. 373: "The light in which we are disposed to consider this question is that, after a dissolution of a partnership, no partner can create a cause of action against the other partners, except by a new authority communicated to him for that purpose. It is wholly immaterial what is the consideration which is to raise such cause of action, whether it be a supposed pre-existing debt of the partnership, or any auxiliary consideration which might prove beneficial to them. Unless adopted by them, they are not bound by it."

The partnership of Payne & Co. was dissolved and ceased to exist as such before banking hours on the 9th of January. The "day," in banking parlance, means simply the few hours set apart by usage as banking hours. Banking hours are so far recognized by the courts that any transaction in the ordinary course of banking business, which is to be had with the bank on any day, must be had within banking hours upon that day. The firm of Payne & Co., then, did not exist on the 9th of January; it was dissolved before banking hours. It is admitted that the letter of the appellant bank did not reach its destina-

tion until the 9th.   It then never reached the firm of Payne & Co. at all, but it came into hands of the surviving partner, who claimed the right to receive it in the name of the late firm, and charge it to the said extinct partnership, and thus created a debt against the dissolved firm of $929.13.   In other words, on the dissolution of the firm the debt to the first National Bank of Alexandria, due by the said firm on the last moment of its existence, was $1,557.63 ; whereas, after its dissolution, by the action of its surviving partner it was made to owe the said First National Bank of Alexandria $2,486.76, and had incurred a debt, if the surviving partner had such power, of $929.13 after dissolution.   This the surviving partner could not do ; his powers do not go so far.   If the question arose upon the assertion of the right to charge Payne's estate with this, against his personal representative, it must be conceded that no such right could exist.   Whether the transaction was hurtful or beneficial is immaterial.   If it be true that Payne & Co. could not be charged with this as a non-existent firm, how does . the case stand ?   The surviving partner received this sum of money destined for Payne & Co., and he was unable to apply it as directed. It was then a sum of money or a lot of evidences of debt in his hands belonging to the First National Bank of Alexandria, with whose instructions he could not comply.   He was bound to obtain further instructions from his principal, or return the remittance.   He had no authority to apply it otherwise than as directed.   It was not the property of the late firm.   It was not a debt due the late firm.   It could not be received or paid out on account of the partnership.   It was in no wise connected with the late firm.   It never came into their hands at all.   He could not undertake to deal with it as partnership property, and, if he received it and disposed of it, it would in no wise concern the affairs of the late firm, and the deceased partner's estate could not be held bound for it.   He did not return it, however, as has been said, but conveyed in trust to secure the debts of the dissolved partnership.   This he could not do, because, as we have

said, it was not the property of the late firm, and could not be bound for the debts of the deceased partner any more than his estate could be held liable for it.

Having passed, then, actually, but unlawfully, and without any authority, express or implied, from the real owners into the hands of appellee trustees, can it be reclaimed? It appears to be easily and clearly traceable upon the books of the late concern, placed there after there was no such firm; no checks have been drawn against it; it has remained unchanged in any respect, and there is no difficulty in tracing and identifying it. It does not belong to the assignees, because it did not belong to the firm. It was not in the power of the surviving partner to convey it. It did not pass by the deed, and the assignees have no right to it whatever, but, actually holding it, they cannot use it for the purposes of the firm, but ought, in justice, to return it to the owner, the First National Bank of Alexandria. It is claimed by them that placing it in the mail commenced a transaction with the firm of Payne & Co., which the surviving partner had a right to perfect, because already begun, and this is what the commissioner reports; but in no sense is this so. The transaction could not begin with them so as to charge them in any way, unless the remittance was received. What responsibility was there, or could there be, if they never received it? If lost in the mail or recalled, or if by any means it never reached them, can it be contended that they could be held responsible? This is what did occur. It never did reach them. The firm did not receive it but some other person. That other person cannot deliver it to the dissolved firm; it is incapable of taking. His plain obligation is, as we have said, to return it to the owners, or dispose of it as they direct. But it is insisted that the apellant ratified what was done. There is no ratification in the case. There was not only no ratification, after full information, but a positive renunciation of the unauthorized act. To the telegram of Judge Keith on the 9th: "Do not send letter; will remit balance to-morrow,"—there was no reply; but when,

on the morning of the 10th of January, he sent the following: "Are unable to remit balance as promised yesterday"—the bank promptly set up its claim, by telegram, on the 12th, as stated. We think this money is no part of the assets of Payne & Co., and that the appellees have no right to hold it under the assignment to them, and that it should be delivered to the owner, the appellant bank. *Overseers* v. *Bank,* 2 Gratt. 547; *McLeod* v. *Evans,* 66 Wis. 401; *Fahnestock* v. *Bailey,* 3 Metc. (Ky.) 48; *Bank* v. *Insurance Co.,* 104 W. S. 54. The appellees rely in part on the case of *Heberton* v. *Jepherson,* 10 Pa. St. 124, where a consignment is made to commission merchants (partners) to be sold. One died, the firm thereby being dissolved, and thereafter sale of the consigned effect was made by the surviving partner. This sale was adjudged valid, and the estate of the dead partner held responsible to the consignor. In that case the goods were received by the firm before, not after, dissolution, and it was the business of the partnership to sell them. This does not seem to be at variance with anything we have said, and is in accord with the appellees' citation from Lindl. Partn. 298, 299. We are of opinion to reverse the decree of the circuit court of Fauquier county appealed from, and a decree will be rendered here accordingly.

DECREE REVERSED.