FIRST NATIONAL BANK OF RICHMOND v. JUNIUS DAVIS AND JAMES A. LEAK, Receivers of the Bank of New Hanover.

*Banks and Banking—Collections—Principal and Agent—Trustee and Cestui Que Trust—Conversion—Creditor and Debtor—Insolvency.*

1. Where, under an agreement between plaintiff bank and its correspondent N. H. Bank it was agreed that the latter should collect commercial paper and checks forwarded it by the plaintiff for a commission and remit daily for the proceeds, the relation of principal and agent as to any paper ceased on its collection and the relation of creditor and debtor arose immediately as to the cash (or its equivalent).

2. Where, under such agreement, the proceeds of such collections were mingled with the proceeds of the N. H. Bank, the cashier of which had no knowledge of its insolvency until its failure, the N. H. Bank cannot, upon its failure, be chargeable with a conversion of plaintiff bank's funds, since, in the absence of such knowledge on the part of the cashier, the expressed contract between the parties, with its necessary implication as to the disposition to be made of the plaintiff's money as soon as any of it was collected, remained in full force until the failure.

CIVIL ACTION, heard at January Term, 1894, of NEW HANOVER Superior Court, before *Brown, J.* By consent a jury trial was waived and the facts were found by the Court.

The action was to establish a preferential claim against the assets of the Bank of New Hanover in defendants' hands. The action was dismissed, and plaintiff appealed.

The following is so much of the case on appeal as is essential to an understanding of the opinion: Defendant Davis is the receiver of the Bank of New Hanover at Wilmington, and defendant Leak is a receiver of a branch of said bank at Wadesboro. The Bank of New Hanover at Wilmington received drafts, notes and other evidences of debt daily from the plaintiff for collection, charging therefor one-eighth of one per cent. for all collections on Wilmington, and one-fourth of one per cent. on all collections outside of Wilmington, and agreed to remit daily. In pursuance of that agreement the Bank of New Hanover received a large number of collections from the plaintiff. Said bank collected and remitted daily, generally. The letters from the plaintiff to said bank, inclosing said collections sued for in this action, run from May 21, 1893, to June 14, 1893, and are twenty-two in number. The Bank of New Hanover made an assignment, and receivers were appointed June 19, 1893. The cashier, W. L. Smith, had no knowledge that the Bank of New Hanover was insolvent until it failed. The plaintiff kept no deposit account for

the Bank of New Hanover, and the Bank of New Hanover kept no regular deposit account for the plaintiff.  At the time of its failure the Bank of New Hanover had received for collection, sent to it by the plaintiff, the sum of $12,-286.92.  Of this sum $146.11 was received in actual money, and the remainder of the said sum was received in checks on the Bank of New Hanover and the Atlantic National Bank.  The plaintiff had no knowledge of the insolvent condition of the Bank of New Hanover.  The Bank of New Hanover, following the invariable custom of all banks, kept its receipts from collections and all other moneys received by it mixed together in one general fund.

*Messrs. Thomas W. Strange* and *Iredell Meares*, for plaintiff (appellant).

*Messrs. George Davis* and *George Rountree*, for defendants.

BURWELL, J.: After a careful examination of the numerous authorities cited by the counsel representing the parties to this cause we have come to the conclusion, upon the facts found, that the relation of the Bank of New Hanover to the plaintiff bank, at the time of the appointment of the defendant receiver, was merely that of debtor to creditor as to the sum of money which is in controvery in this suit. The two banks must be presumed to have entered into the contract between them with the expectation and implied agreement that, in the transaction of the business provided for by that contract, each would act according to well-known and established rules and customs in such business. *Bank* v. *Bank*, 75 N. C., 534; *Marine Bank* v. *Fulton Bank*, 2 Wallace, 252.

Now, it is a well-known and established custom of banks, when acting as collecting agents either for other banks or indeed for any customer, to put all collections made by

them into the general fund of the bank, unless directed to make of them a special deposit, and use them from hour to hour and from day to day in the transaction of their' current business, and, when the day or the hour arrives for making remittances, to send to the bank or other customer for whom the collection was made, not the identical currency or money collected, but money or currency taken from the general fund without any reference to its identity, or, as is far oftener done, its cashier's check on itself or some other bank, or in some way to effect a transfer of the fund by the use of credits of one kind or another, without the handling and shipping of any actual money or currency at all.  Speaking of such an agreement, Justice MILLER said, in *Marine Bank* v. *Fulton Bank, supra,* that "the truth undoubtedly is that both parties understood that when the money was collected the plaintiff was to have credit with the defendant for 'the amount of the collection, and that the defendant would use the money in its business.  Thus the defendant was guilty of no wrong in using the money, because it became its own.  It was used by the bank in the same manner that it used the money deposited with it that day by city customers, and the relation between the two banks was the same as that between the Chicago Bank and its city depositors."  And he adds that "it would be a waste of argument to attempt to prove that this was a debtor and creditor relation."  This is cited with approval in *Commercial Bank of Pennsylvania* v. *Armstrong,* 148 U. S., 50, where Mr. Justice BREWER said: " Bearing in mind the custom of banks, it cannot be that the parties understood that the collections made by the Fidelity during the intervals between the days of remitting were to be made special deposits, but, on the contrary, it is clear that they intended that the moneys thus received should pass into the general funds of the bank and be used by it as other funds, and

that when the day for remitting came the remittance should be made out of such general funds." And in that case it was decided that, as to all money actually collected by the Fidelity Bank and put into its general fund under authority implied from the customs of banks, the relation of that bank to the bank for whom it was acting as collecting agent was simply that of a debtor to a creditor.

It is true that in the cases cited above the contracts provided that the collecting bank should remit, not daily or on the day of collection, but at stated periods. But we do not think that difference in the terms of the contracts can make the principles fixed by those high authorities inapplicable here. The test is, Did the plaintiff bank agree expressly or impliedly that the proceeds of drafts, checks, etc., sent by it to its collecting agent, the Bank of New Hanover, should not be held by the latter as a special deposit, but merely mingled with the other funds coming in and used in the daily intricate payments and collections of its usual business? Such an understanding or agreement does not appear to us at all inconsistent with the expressed stipulation that remittances should be made each day. This stipulation only required that that should be done each day which, under the contracts under consideration in the cases cited above, was to be done—not daily, but at longer intervals. The important point is not, as we have said, when or how often the remittances were to be made, but whether it was understood that the collecting bank could and would transact the business as it did, treating the checks, drafts, etc., sent it as its own in its daily transactions, keeping *memoranda* or book entries to show how much was due to the plaintiff and to other banks for whom it was doing like services, and then, at a convenient hour and in some convenient way, transferring to the plaintiff bank the money due to it. The manner of keeping the account was immaterial—a mere

matter of book-keeping. If, under the contract, it was not wrongful for the Bank of New Hanover to use money coming to it from the collection of plaintiff's drafts, checks, etc., as its own and remit other money or other checks and drafts to the plaintiff therefor, then it must be that there was no breach of trust or unlawful conversion in the conduct of the officers of the Bank of New Hanover in the conduct of this business for plaintiff. It seems to us plain that both banks must have clearly understood that the relation of principal and agent, as to any particular check or draft sent for collection, ceased just as soon as cash or its equivalent was received by the collecting bank, and that immediately there was substituted for that relation, as to that cash, the relation of debtor and creditor. To announce a contrary conclusion would be to declare that the officers of hundreds of the banks of the country were daily unlawfully and wrongfully converting to the use of their institutions the property of their correspondent banks.

If the cashier of the Bank of New Hanover had become aware before its failure that the bank was insolvent that knowledge would perhaps have had the effect to annul his right, implied from the terms of the contract and the established customs of such business, to use the collected funds of the plaintiff as he did. It is found as a fact that he had no such knowledge; therefore the expressed contract between the parties, with its necessary implication as to the disposition to be made of the plaintiff's money as soon as any of it was collected, remained in force till the failure. Here there was no unlawful conversion of the funds of the plaintiff bank, and there is no necessity for the discussion of the important question presented in the brief of the learned counsel for plaintiff in regard to following funds that have been improperly used by a faithless trustee or agent.

The plaintiff has no lien upon or right to the cash or

other assets that came to the hands of the receiver that is superior to the claims of other banks whose relations to the insolvent bank were similar to the plaintiff's, or to the claims of its depositors. All these, unless some special circumstances confer special rights, must stand as mere creditors and share equally in the funds to be distributed. The judgment is　　　.　　.　　　Affirmed.