# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## FEDERAL RESERVE BANK OF RICHMOND v. H. D. PETERS, RECEIVER OF PRINCE EDWARD-LUNEN-BURG COUNTY BANK, AND M. E. GEE.

### June 12, 1924.

1. BANKS AND BANKING—*Collection—Method of Handling Collections—Relation of Debtor and Creditor—Relation of Principal and Agent.*—In order to make collections of checks handled by them, banks usually adopt one of two methods—reciprocal accounts, or remittance. Under the reciprocal accounts method, the collecting bank, upon receipt of payment of the checks, gives credit upon its books to the forwarding bank, and the forwarding bank charges the collecting bank upon its books. They settle from time to time according as the balance accumulates, with the one or the other. Under this method, as soon as the collection is made the relation of the banks is that of creditor and debtor. Under the remittance method the forwarding bank sends the checks to the collecting bank with instructions to collect them and remit immediately. The collecting bank is not authorized to retain the proceeds in its hands, and therefore acts only as an agent for the forwarding bank.

2. BANKS AND BANKING—*Collection—Method of Handling Collections—Relation of Debtor and.Creditor—Relation of Principal and Agent—Case at Bar.*—In the instant case the Federal Reserve Bank of Richmond was authorized to receive and did receive from various member banks and other persons checks and drafts drawn upon and payable by the Prince Edward-Lunenburg County Bank. In order to collect the amount of such drafts, the Federal Reserve Bank had agreed with the Prince Edward-Lunenburg County Bank that all such checks and drafts should be sent by the Federal Reserve Bank, by mail, to th Prince Edward-Lunenburg County Bank, and that the Prince Edward-Lunenburg County Bank, when the checks and drafts were received, would present or cause them to be presented to itself, and would pay such as were good and it desired to pay, and would return properly protested such as it was unwilling to pay, and would immediately remit the amount of the checks which it paid by means of a shipment of currency or money to the Federal Reserve Bank of Richmond or by means of a draft drawn by the Prince Edward-Lunenburg County Bank upon some other bank with which it had funds upon deposit.

*Held:* That it was manifest that the remittance method of collection was the one used by the Federal Reserve Bank of Richmond in the instant case, and that the relation of the banks was not that of debtor and creditor, but that the Prince Edward-Lunenburg County Bank acted as agent for the Federal Reserve Bank.

3. BANKS AND BANKING—*Collections—Bank Receiving a Check Upon Itself from Correspondent Bank to Make Presentation to Itself.*—When a bank receives from its correspondent a check upon itself, it is an agent for its correspondent to make a presentation to itself.

4. BANKS AND BANKING—*Collection—Method of Handling Collections—Relation of Debtor and Creditor—Relation of Principal and Agent—Case at Bar.*—In the instant case there was an agreement between the Federal Reserve Bank of Richmond and the Prince Edward-Lunenburg County Bank, by which the Prince Edward-Lunenburg County Bank would cause checks drawn upon the Prince Edward-Lunenburg County Bank and sent to it by the Federal Reserve Bank by mail to be presented to itself for payment, and immediately upon payment remit the amount of the check so paid to the Federal Reserve Bank by a shipment of currency or by a draft drawn upon some other bank. When the checks were cashed the amount realized thereby became the property of the Federal Reserve Bank of Richmond in the hands of the Prince Edward-Lunenburg County Bank as its trustee. The trustee had the right to withdraw the money from the bank in currency and ship it to the Federal Reserve Bank of Richmond. But the fact that it retained the cash, thus permitting the same to temporarily mingle with its general funds and sent the Federal Reserve Bank of Richmond a draft upon its deposit in a third bank, did not cause the relation of debtor and creditor to arise between the Federal Reserve Bank of Richmond and the Prince Edward-Lunenburg County Bank, but the general deposit was thereby impressed with a trust. The relation of principal and agent, which admittedly obtained between the parties at the beginning of the transaction, did not change to that of debtor and creditor.

5. PRINCIPAL AND AGENT—*Authority to Do a Specific Thing—Authority to Do whatever is Necessary to Accomplish the Thing—Authority to Do a Separate Thing—Case at Bar.*—An authority to do a specific thing authorizes by implication the doing whatever is necessary to accomplish the thing authorized, but not the doing of another and separate thing. Thus, where the authority granted by one bank to another was to collect checks and remit the proceeds at once, the collecting bank has no implied authority to destroy, by the mere cashing of the checks, the relation of principal and agent, and substitute therefor the relation of debtor and creditor, as this change of relation was not necessary to carry into effect the authority granted.

6. TRUSTS AND TRUSTEES—*Confusion of Goods—Mingling of Trust Money with that of Trustee.*—Where the relation of trustee and *cestui que*

*trust* is established the mingling of the trust fund with the general fund in the hands of the trustee does not destroy the trust, but serves to extend the trust or lien to the whole mass of money.

7. MAXIMS—*Equity Regards that as Done which Ought to Have Been Done— Equitable Assignment.*—Equity regards that as done which ought to have been done. Thus, where a collecting bank is authorized to remit the amount of collections to a forwarding bank, or to send the forwarding bank a draft on another bank for such amount, such draft by the collecting bank is an equitable assignment of the funds so drawn upon.

8. BANKS AND BANKING—*Collection—Method of Handling Collections—Relation of Debtor and Creditor—Relation of Principal and Agent—Case at Bar.*—In the instant case, the contract between the forwarding and receiving banks did not arise out of a custom, but out of an agreement between them by which the collecting bank would cause the checks to be presented to it for payment, and immediately upon payment remit the amount of the checks so paid to the forwarding bank by a shipment of currency, or by a draft upon some other bank with which it had funds upon deposit. Under these circumstances, it was not contemplated that the receiving bank should become the owner of the specific money collected, and it had no express or implied contract right to lend or otherwise use it in its banking business. It was a special agent of the forwarding bank to collect the checks and remit the money immediately, and the relationship of debtor and creditor did not arise.

9. BANKS AND BANKING—*Collections—Insolvency—Whether Insolvent Bank a Debtor or Trustee.*—In determining whether or not an insolvent bank is a debtor or a trustee, the court may well look to the intention of the parties. If the forwarding bank intends to leave the money in the hands of the collecting bank, to be used by it in its usual course of business, it intends to become a general depositor, and accepts the bank as a debtor. If, on the other hand, the forwarding bank, as in the instant case, does not intend it to be so used, and demands that the proceeds of the checks be immediately returned to it, it does not become a depositor, but simply intrusts the bank with the money for a special purpose, and the collecting bank becomes a trustee, and a court of equity will impress with a trust the general funds in the hands of the trustee in which the trust fund is included.

10. BILLS, NOTES AND CHECKS—*Payment—Check as Payment—Case at Bar.*— A check is not payment until the check is paid, and the drawing of a draft by a collecting bank to the order of the forwarding bank and mailing the same to the last mentioned bank in no way affected the trust already impressed upon the funds collected by the collecting bank. While the check was not an assignment of the fund against which it was drawn, as between the drawer of the check and a person who gave value for it, it was an equitable assignment of the fund *pro tanto.*

Appeal from a decree of the Circuit Court of Lunenburg county.    Decree for defendants.    Complainant appeals.

*Reversed and final judgment.*

The opinion states the case.

*M. G. Wallace*, for the appellant.

*Geo. E. Allen*, for the appellees.

*Geo. Bryan, amicus curiae.*

WEST, J., delivered the opinion of the court.

On and before January 5, 1922, the Federal Reserve Bank of Richmond was engaged in the business of banking, as defined in a certain act of Congress known as the Federal reserve act.    The Prince Edward-Lunenburg County Bank was a State banking corporation engaged in the business of banking at Meherrin, Virginia.    The Prince Edward-Lunenburg County Bank was not a member bank and maintained no deposit account with the Federal Reserve Bank of Richmond, and the Federal Reserve Bank of Richmond maintained no deposit account with the Prince Edward-Lunenburg County Bank, but the Federal Reserve Bank of Richmond was authorized to receive and did receive from various member banks and other persons checks and drafts drawn upon and payable by the Prince Edward-Lunenburg County Bank.    In order to collect the amount of such drafts, the Federal Reserve Bank of Richmond had agreed with the Prince Edward-Lunenburg County Bank that all such checks and drafts should be sent by the Federal Reserve Bank of Richmond, from its office in Richmond, by mail, to the

Prince Edward-Lunenburg County Bank, at its office in Meherrin, Virginia; and that the Prince Edward-Lunenburg County Bank, when the said checks and drafts were received, would present or cause them to be presented to itself, and would pay such as were good and it desired to pay, and would return properly protested such as it was unwilling to pay, and would immediately remit the amount of the checks which it paid by means of a shipment of currency or money to the Federal Reserve Bank of Richmond or by means of a draft drawn by the Prince Edward-Lunenburg County Bank upon some other bank with which it had funds upon deposit.

The two banks had done business under the above arrangement for some time, and on the 5th day of January, 1922, the Federal Reserve Bank of Richmond sent to the Prince Edward-Lunenburg County Bank a letter containing checks drawn upon the Prince Edward-Lunenburg County Bank to the amount of $2,295.10. The Prince Edward-Lunenburg County Bank received the above mentioned letter on the 6th day of January, 1922. Apparently the drawers of the checks had sufficient balances with the bank to have required it to pay, and the bank had on hand a sufficient sum to have enabled it to have paid the checks had they been presented at its counter and cash demanded.

The Prince Edward-Lunenburg County Bank accordingly cancelled the checks sent to it by the Federal Reserve Bank of Richmond, and charged them to the accounts of the several drawers of the said checks, and deducted them from the balances of such drawers.

The Prince Edward-Lunenburg County Bank thereupon drew in favor of the Federal Reserve Bank of Richmond a draft upon the Bank of Commerce and Trusts, of Richmond, Virginia, for the sum of $2,295.10, and sent it to the Federal Reserve Bank of Richmond

in settlement for the amount which the Prince Edward-Lunenburg County Bank had collected upon the checks sent to it by the Federal Reserve Bank of Richmond. This draft was dated and apparently mailed on the 6th day of January, 1922. At that time the Prince Edward-Lunenburg County Bank had on deposit to its credit with the Bank of Commerce and Trusts the approximate amount of $11,000.00. As soon as the said draft was mailed to the Federal Reserve Bank of Richmond and certain other drafts apparently given under like circumstances were mailed to the payees thereof, the Prince Edward-Lunenburg County Bank deducted the amount of the said drafts from its balances with the Bank of Commerce and Trusts and charged the amount of the said drafts to the persons to whom they were payable, just as if cash had actually been withdrawn from the Bank of Commerce and Trusts and delivered to the payees of the several drafts.

The said draft for $2,295.10 was received by the Federal Reserve Bank of Richmond in due course of mail and was presented by it to the Bank of Commerce and Trusts and demand was made for the payment. Payment was refused because in the meantime a receiver had been appointed for the Prince Edward-Lunenburg County Bank by a decree entered by the judge of the Circuit Court of Lunenburg county. At the time the said draft was so presented the said Bank of Commerce and Trusts had in its hands the sum of approximately $11,000.00 payable to the order of the Prince Edward-Lunenburg County Bank, but it refused to pay this sum to the Federal Reserve Bank because of the fact that a receiver had been appointed, and the said sum has since been paid over to the receiver in this cause.

Prior to the closing of the Prince Edward-Lunenburg County Bank, the Federal Reserve Bank of Richmond

had been directed by the Secretary of the Treasury of the United States to make for the public, through a branch which the Federal Reserve Bank of Richmond maintains in the city of Baltimore, exchanges of different kinds of United States coin and currency for other kinds of coin and currency, and it had accordingly issued a circular addressed to all the banks in the fifth Federal reserve district, in which the Federal Reserve Bank of Richmond did business, stating that it was ready and willing to exchange any kind of United States coin and currency for any other kind of coin and currency for which it might properly be exchangeable, provided the persons shipping the coin and currency for exchange would pay the cost of such shipment.

On the 6th day of January, 1922, the Prince Edward-Lunenburg County Bank shipped to the Federal Reserve Bank of Richmond, at its Baltimore branch, the sum of $510.82 in five cent and one cent pieces of United States coin. At the time that this shipment was made the Prince Edward-Lunenburg County Bank requested the Federal Reserve Bank of Richmond to send to the Prince Edward-Lunenburg County Bank a check in settlement for the amount of coin so shipped. The amount due for said shipment, after deducting express charges, was $505.45, but the check requested by the Prince Edward-Lunenburg County Bank was not sent because before the coin could be counted and the check prepared and sent, the Federal Reserve Bank of Richmond was informed that the Prince Edward-Lunenburg County Bank had been placed in the hands of a receiver.

In due time the Federal Reserve Bank of Richmond presented its claim to the commissioner to whom this cause was referred, and contended that the Prince Edward-Lunenburg County Bank was its agent for the purpose of transmitting to it the money collected upon

the several checks sent to it by the Federal Reserve Bank of Richmond, and that by reason of the fiduciary relationship of the Prince Edward-Lunenburg County Bank the cash in its vault was impressed with a trust in favor of the Federal Reserve Bank of Richmond, or that the cash in the Bank of Commerce and Trusts, against which the draft sent to the Federal Reserve Bank of Richmond was drawn, was impressed with a trust. The said Federal Reserve. Bank of Richmond further admitted that it held in its hands the sum of $505.45, which should in a settlement of its account between itself and the receiver be properly a credit upon the amount due by the said failed bank to it. The commissioner to whom. this cause was referred sustained the contention of the Federal Reserve Bank of Richmond, and reported that it was entitled to receive payment in full out of the cash in the hands of the receiver, or out of the funds in the Bank of Commerce and Trusts.

In apt time Crag C. Hatchett, by his attorney, filed in the Circuit Court of Lunenburg county his petition alleging that he was a depositor of the failed bank, and, therefore, interested in the administration of its estate, and further asking that he be allowed to become a party defendant to the claim of the Federal Reserve Bank of Richmond and to object and to make exceptions to certain portions of the report of Commissioner Nelson, including the portion which determined that the Federal Reserve Bank of Richmond was entitled to a secured or preferred claim.

Thereupon, the Federal Reserve Bank of Richmond filed in court its petition, alleging in substance the above mentioned facts, and praying that the report of Commissioner Nelson be approved and confirmed so far as it dealt with its claim. Further evidence was taken by both Crag C. Hatchett and the Federal Re-

serve Bank of Richmond, but no specific conflicts of testimony appeared from such evidence.

The foregoing statement of facts, taken from the petition, is sustained by the record.

Upon the final hearing the court entered a decree denying the claims of the Federal Reserve Bank of Richmond to a preference, establishing its claim as an unpreferred debt for $2,295.10, adjudging that it is not entitled to set off against the indebtedness due it by the Prince Edward-Lunenburg County Bank the sum of $505.45, referred to in the petition, and directing the Federal Reserve Bank to pay the same to the receiver of the Prince Edward-Lunenburg County Bank. The case is before us upon an appeal from that decree.

The appellant assigns as error the action of the court:

First: In denying the claim of petitioner to be a lien upon the cash which was in the vault of the Prince Edward-Lunenburg County Bank at the time that the receiver took charge, and in refusing to direct that so much of such cash as was necessary to pay in full the claim of petitioner should be paid over to it.

Second: In denying the claim of petitioner to be an equitable lien upon the deposit of the Prince Edward-Lunenburg County Bank in the Bank of Commerce and Trusts, and in refusing to direct the receiver to pay over to petitioner from such funds a sum sufficient to pay its claim in full.

Third: In adjudging that the Federal Reserve Bank of Richmond was not entitled to apply on the indebtedness due it by the Prince Edward-Lunenburg County Bank, the sum of $505.45, and in requiring and directing the Federal Reserve Bank of Richmond to pay the same to the receiver.

[1, 2] In order to make collections of checks handled by them, banks usually adopt one of two methods—reciprocal accounts, or remittance. Under the recip-

rocal accounts method, the collecting bank, upon receipt of payment of the checks, gives credit upon its books to the forwarding bank, and the forwarding bank charges the collecting bank upon its books. They settle from time to time according as the balance accumulates, with the one or the other. Under this method, as soon as the collection is made the relation of the banks is that of creditor and debtor. Under the remittance method the forwarding bank sends the checks to the collecting bank with instructions to collect them and remit immediately. The collecting bank is not authorized to retain the proceeds in its hands and therefore acts only as an agent for the forwarding bank. It is manifest that the remittance method was the one used by the Federal Reserve Bank of Richmond in the instant case.

The first two assignments of error involve the question, whether the facts disclosed by the record are such as to create a trust relation which gave to the Federal Reserve Bank of Richmond a lien upon the assets of the failed bank, before and after they passed into the hands of the receiver.

[3] When a bank receives from its correspondent a check upon itself, it is an agent for its correspondent to make a presentation to itself. *Hilsinger* v. *Trickett*, 86 Ohio St. 286, 99 N. E. 305, Ann. Cas. 1913-D, p. 421.

[4] The agreement between the two banks constituted the Prince Edward-Lunenburg County Bank a special agent to collect and remit immediately the proceeds of the checks enclosed, either in currency or by draft on some other bank. When the checks were cashed, the $2,295.10 realized thereby became the property of the Federal Reserve Bank of Richmond, in the hands of the Prince Edward-Lunenburg County Bank as its trustee. The trustee had the right to withdraw the money from its bank in currency and ship it to the

Federal Reserve Bank of Richmond, in which event no
controversy would have arisen.    The fact that it re-
tained the actual cash, thus permitting the same to
temporarily mingle with its general funds, and sent the
Federal Reserve Bank of Richmond a draft upon its
deposit in the Bank of Commerce and Trusts, did not,
however, cause the relation of debtor and creditor to
arise, but the general deposit was thereby impressed
with a trust.

The relation of principal and agent, which it is ad-
mitted obtained between the parties at the beginning
of the transaction, did not change to that of debtor and
creditor.

[5] The authority expressly given the Prince Edward-
Lunenburg County Bank was to collect the checks and
remit immediately by means of a shipment of currency
to the Federal Reserve Bank of Richmond, or by means
of draft drawn by the Prince Edward-Lunenburg
County Bank upon some other bank with which they
had funds upon deposit.    An authority to do a specific
thing authorizes by implication the doing of whatever
is necessary to accomplish the thing authorized, but
not the doing of another and separate thing.    The
authority granted was to collect and remit at once.
The authority now sought to be added by implication
is to destroy, by the mere cashing of the checks, the re-
lation of principal and agent and to substitute therefor
the relation of debtor and creditor.    It is clear that this
change of relation was not necessary to carry into effect
the authority granted.    Besides, the mingling of trust
money with that of the trustee does not defeat the
owner's title, simply because there is no way to identify
money.    The general assets being increased by the
amount of the money attempted to be converted, it is
equitable and just that the general assets should bear
the burden of the preference.

We cannot agree with the contention of appellee that a commingling of the proceeds of the checks with the funds of the collecting bank brings about the relation of debtor and creditor.

[6] Where the relation of trustee and *cestui que trust* is established the mingling of the trust fund with the general fund in the hands of the trustee does not destroy the trust, but serves to extend the trust or lien to the whole mass of money.

In the recent case of *Board of Supervisors* v. *Prince Edward-Lunenburg County Bank*, 138 Va. 333, 121 S. E. 903, this court quoted with approval from *Knatchbull* v. *Hallett* (L. R. 13 Ch. Div. 696, 707), where Sir George Jessel, Master of the Rolls, says: "* * Supposing, instead of being invested in the purchase of land or goods, the money were simply mixed with other moneys of the trustee, using the term * * in its full sense, as indicating every person in a fiduciary capacity, Does it make any difference, according to the modern doctrine of equity? I say, none. It would be very remarkable if it were to do so. Supposing the trust money was 1,000 sovereigns, and the trustee put them into a bag, and by mistake or accident, or otherwise, dropped a sovereign of his own into the bag. Could anybody suppose that a judge, in equity, would find any difficulty in saying that the *cestui que trust* has a right to take 1,000 sovereigns out of that bag? I do not like to call it a charge of 1,000 sovereigns on the 1,001 sovereigns, but that is the effect of it. I have no doubt of it."

Upon the question of whether the relationship existing between banks in such cases is that of debtor and creditor or that of trustee and *cestui que trust*, the authorities are in sharp conflict, but we feel that the better reason and weight of authority support the views expressed herein.

It appears from the record that as soon as the draft was sent to the Federal Reserve Bank of Richmond the cashier of the Prince Edward-Lunenburg County Bank deducted the amount thereof from the apparent balance due from the Bank of Commerce and Trusts upon which the draft was drawn, just as if this amount had already been withdrawn from the latter bank and transferred to the Federal Reserve Bank of Richmond. By this act the cashier intended to set apart such a portion of the balance in the Bank of Commerce and Trusts as was necessary to meet the draft sent to the Federal Reserve Bank of Richmond, as he was obligated to do under his contract.

[7] Equity regards that as done which ought to have been done. Under such circumstances, the draft on the Bank of Commerce and Trusts was an equitable assignment of the funds to the Federal Reserve Bank of Richmond, and we will so adjudge.

In *Messenger* v. *Carroll Trust & Savings Bank,* 193 Iowa, 608, 187, N. W. 545, the Moline Plow Company sent a draft to the Carroll Trust and Savings Bank, at Carroll, with the instructions to collect and remit. The draft was drawn on the Swaney Company and was paid by a check on the Carroll Trust and Savings Bank. The court, in the course of its opinion, said: "It is the contention for the Moline Plow Company that the relation created between it and the bank was strictly that of principal and agent; whereas, the receiver contends that the transaction had created the relation of creditor and debtor only. The bank complied strictly with the directions of the claimant. It did not purport to open any account with the claimant, nor to deposit the proceeds to the credit of the claimant. It simply put such proceeds in the form of its own draft upon the Chicago Bank for the purpose of remittance. The case at this point is ruled squarely by *Brown* v. *Sheldon*

*State Bank*, 139 Iowa 83, 117 N. W. 289, and by our previous cases cited therein.   The question is fully discussed in the *Brown Case*, and nothing can be gained by a repetition of the discussion here.   Following such case, it must be held that the proceeds of the sight draft came into the hands of the bank as agent for the Moline Plow Company, and that the title thereto was at all times in the principal and not in the agent.

"We deem it clear that the net result of the transaction of payment by the Swaney Company and the receipt thereof by the collecting bank was the same as though the Swaney Company had drawn the currency into its own hands by means of check, and had thereupon delivered the same to the collecting bank in payment of the sight draft.   Such is the holding of the cited cases."

In the case of *Goodyear Tire & Rubber Company* v. *Hanover State Bank*, 109 Kan. 772, 204 Pac. 992, 21 A. L. R. 677, decided by the Supreme Court of Kansas, the Goodyear Tire and Rubber Company of Akron, Ohio, sent a draft to the Hanover State Bank.   The draft was drawn upon Poell Brothers, who paid it by a check on the Hanover State Bank.   The Hanover State Bank failed before remitting the amount of the draft to the Goodyear Tire and Rubber Company.   The court held that the rubber company was entitled to impress a trust upon the cash in the hands of the failed bank. In disposing of the case this language was used:

"If Poell Brothers, instead of paying the draft upon them by check, had used currency for the purpose, there can be no doubt that the receiver would hold the amount in trust for the plaintiff, for the total of the cash, or its equivalent, which came into his hands, would necessarily, or at all events presumptively, have been that much larger by reason of such payment. The court is of the opinion that the rule applies, that

where a payment to a bank is made by check drawn thereon, the result is the same as though the depositor had presented his check, received the money over the counter, and then used it in making the payment. That rule has often been announced. *Washon* v. *Bank*, 87 Kan. 698, 125 Pac. 17; 2 Morse on Banks and Banking (5th ed.) 451, and cases cited in note.

"* * It follows from these views that the money belonging to the plaintiff must be regarded as having passed into the hands of the receiver, increasing by that amount the assets to be administered by him, and that the plaintiff is entitled to reclaim it as a trust fund."

In the case of *Keal* v. *Hanover State Bank*, 109 Kan. 776, 204 Pac. 994, the Kansas court also held that where a check of one * * is sent by mail for collection to the bank on which it is drawn, which has at the time of its receipt, and at all other times thereafter, sufficient cash to meet it, and the bank charges it to the drawer and at once mails to the owners a draft for the amount, payment of which is prevented by the bank commissioner taking charge of the bank issuing it, before it could be presented in due course of business, the owners of the check have a preferred claim for its amount against the assets of the suspended bank.

To the same effect is *Kansas State Bank* v. *First State Bank of Marion*, 62 Kan. 788, 64 Pac. 634.

In *State* v. *Bank of Commerce of Grand Island*, 61 Neb. 181, 85 N. W. 43, 52 L. R. A. 858, the court said: "It is a recognized principle in this State that money collected by a bank for another on notes or drafts is in trust for the owner who is a preferred creditor in case the bank goes into liquidation."

In *Arnot* v. *Bingham*, 55 Hun. 553, 9 N. Y. Supp. 68, the plaintiff sent to the First National Bank of Dansville a note payable by one of its customers at the bank. The customer paid the note by means of a check. The

check was cancelled and charged to the customer's account. At the time the customer had to his credit a balance sufficient to pay his check and the bank had cash in its vaults sufficient to have paid the check had payment been demanded in cash. In deciding the case, the New York court said: "If the receipt by the Dansville Bank of the maker's check, the cancellation and surrender of the note and deducting the amount of the check from the maker's account was in effect a collection of such check from the general fund, then in the hands of the bank, so that it was bound to hold the money for the plaintiffs and apply it to the purpose for which it was collected, then we think that it was properly held that the funds remaining in the hands of the bank when it failed, as between the plaintiffs and the bank, or between the plaintiffs and the receiver, equitably belonged to the plaintiffs, as well as the amount collected on the McCullom note."

In *State National Bank* v. *First National Bank of Atchison*, 124 Ark., 531, 187 S. W. 673, the First National Bank of Atchison sent to the State National Bank for collection certain drafts of F. J. Darrag & Company. These drafts were presented to Darrag & Company by the State National Bank, who paid them by their check on the State National Bank. The State National Bank collected the check of Darrag & Company by charging it to the account of that firm, on June 15th. On June 19th the State National Bank closed its doors because of insolvency, without having remitted the amount of the check, but with cash on hand in excess of the amount of the check. In deciding the case the Supreme Court of Arkansas held: "It is likewise well established that a bank receiving a draft for collection merely is the agent of the remitter, drawer, or forwarding bank and takes no title to the paper or the proceeds when collected, but holds the same in

trust for remitting. *Second National Bank* v. *Bank of Aline*, 99 Ark. 386, 138 S. W. 472; *Oklahoma State Bank* v. *Bank of Central Arkansas*, 179 S. W. 509, 3 R. C. L. 633; 3 Am. & Eng. Enc. of Law 815; 5 Cyc. p. 514; *Macy* v. *Roedenbeck*, 227 Fed. 346, 353, 142 C. C. A. 42."

In the course of the opinion the court further said:

"The payment of the drawee of the draft of the amount thereof, by the delivery of its check therefor against his account in the collecting bank and the charging of the amount against his account, constituted to all intents and purposes a payment in cash of the drafts; the check being merely the vehicle of transfer of the cash. Certainly there is no necessity for the drawee of the drafts to take its check to its bank, the collector, and present it and receive the money and hand it back to the bank in payment of the draft.

"The testimony shows that the bank had more money on hand each day it continued business, after the collection of the drafts, than the amount thereof, and that the lowest amount it had on hand thereafter, and which went into the hands of the receiver, was more than $7,000.00, and under the rule announced by this court in *Covey* v. *Cannon*, 104 Ark. 550, 149 S. W. 514, this showing is a sufficient identification of the proceeds of the collected drafts and tracing them to the possession of the receiver."

To the same effect are: *State* v. *Bank of Commerce*, 61 Neb. 181, 85 N. W. 43, 52 L. R. A. 858; *Kansas State Bank* v. *First State Bank*, 52 Kan. 788, 64 Pac. 634; *First National Bank* v. *Sanford*, 62 Mo. App. 394; and *Anheuser-Busch Brewing Co.* v. *Norris*, 36 Neb. 31, 53 N. W. 1037.

In *Western German Bank* v. *Norvell*, 134 Fed. 726, 69 C. C. A. 332, the court held that "when a bank receives money, it being known to its officers to be insolvent, and mingles the money with its own funds, which,

to an amount larger than the sum so received from its client, goes into the hands of its receiver, it is not essential to the right of its client to recover from the receiver that he should be able to trace the identical money into the receiver's hands; but it is sufficient to show that the sum which went into the receiver's hands was increased by the amount which the bank received of its client. *Richardson* v. *New Orleans Deb. Red. Co.,* 102 Fed. 780, 42 C. C. A. 619, 52 L. R. A. 67, and cases cited.''

In the case of *In re City Bank of Dowagiac* (D. C.), 186 Fed. 250, the bank collected $500.00 upon a draft sent it by the Harris Bank. It intermingled the actual money received with its general funds and used it to pay certain debts other than its obligations to the Harris Bank, but it drew against its account with its New York correspondent a draft in favor of the Harris Bank for the proceeds of the collection. The Dowagiac Bank failed before this remittance draft was presented, or collected, having a balance with its New York correspondent more than equal to the outstanding draft payable to the Harris Bank. The court stated the law thus:

''It is clear beyond dispute that Nelson is not a general creditor, but that this money, when received by the City Bank, was a trust fund belonging to Nelson, and the only question in controversy is the selection of the property to which Nelson's lien attaches. The referee gave him a lien only upon the general balance of cash on hand in the vaults of the bank, at Dowagiac, when it closed; and, as this amount was only $495.00, and there are a large number of other preferred claims against the same fund, Nelson will receive, from this lien, nothing of consequence. He appeals from the disallowance of his claim as a lien against the fund in

the National City Bank of New York on February 8th, and since transferred to the trustee.

"I think this latter lien should be allowed. My understanding of the situation is that on February 5th, and because of the mingling of this fund, by the City Bank, with its general funds, Nelson had a lien upon such general funds. This was a floating, indefinite lien, and it could be localized and made specific, either by Nelson's act in seizing sufficient of such funds to satisfy it, or by the act of the City Bank in appropriating sufficient of such funds for that purpose, in which appropriation Nelson, or those representing him, should join or acquiesce. Such specific appropriation was made by the City Bank, when it drew its draft for that purpose against its New York depositary, and had already furnished, or then did furnish, to such depositary, funds sufficient to meet this draft. I think this appropriation of a fund for this purpose, followed by Nelson's use of the draft and demand for the fund so appropriated, established and fixed the lien for $499.50 against such fund, and the trustee should pay to Nelson this amount, unless there are other conflicting liens against the same fund."

Both counsel for appellant and appellee rely upon the case of *First National Bank of Alexandria* v. *Payne*, 85 Va. 890, 9 S. E. 153, 3 L. R. A. 384. The First National Bank sent Payne & Company, private bankers, doing business in Warrenton, Va., a letter containing checks drawn by various depositors in Payne & Company upon that banking firm and requested Payne & Company to credit the account of the First National Bank of Alexandria with the proceeds of the checks. A clerk in the office of Payne & Company accordingly cancelled the checks and charged them to the accounts of the depositors and credited the amount of the checks to the First National Bank of Alexandria. On the day

upon which the letter was received by Payne & Company and the above mentioned entries made in the accounts, Payne & Company were dissolved by the death of one of its partners. The proceeds of the checks received were never paid over to the First National Bank of Alexandria, and it was discovered that the firm was insolvent and an assignment was made for the benefit of its creditors. The Alexandria bank filed a petition praying that the entire amount of the checks sent by it to Payne & Company be paid over to it upon the theory that the proceeds of the checks were a trust fund which did not pass to the assignee. The court sustained this contention and ordered that the full amount of the claim of the First National Bank of Alexandria be paid.

This was clearly a case of reciprocal accounts, and but for the dissolution of the firm of Payne & Company by the death of one of the partners, the proceeds of the checks would have passed to the assignee, and the position of the First National Bank of Alexandria would have been that of a general creditor. Upon the firm's dissolution, however, the surviving partner was without authority to make the firm a debtor to any one, and his action in crediting the account of the First National Bank of Alexandria with the proceeds of the checks was a nullity. The checks had been collected but the proceeds were the property of the Alexandria bank and having been actually but wrongly turned over to the assignee, the court properly ordered the same paid over to the First National Bank of Alexandria, for whom it had been collected. The *Payne Case* is authority for the proposition that wherever the relation of creditor and debtor does not exist, the mingling of the funds of the forwarding bank with the general funds of the collecting bank will not defeat the right of

the forwarding bank to collect the amount due it out of such general funds.

The appellee relies also upon two other Virginia cases: *Pennington, Receiver,* v. *Third National Bank of Columbus, Ga.,* 114 Va. 674, 77 S. E. 455, 45 L. R. A. (N. S.) 781, and *Miller* v. *Norton & Smith,* 114 Va. 609, 77 S. E. 452.

The *Pennington Case* resembles, in some respects, the instant case. It is true that the court, although not necessary to the decision of the case, laid down the general rule that "the collection of a draft by a bank for a customer in the *ordinary course of business* (italics ours), and placed to the customer's credit, amounts to a general deposit by the latter, and creates the relation of debtor and creditor between them." But the court also held that the Tarboro bank, which failed, and had collected a draft sent it "for collection and return, remit to National Park Bank, New York, for our credit and advise," and mingled the proceeds with its general funds, was a trustee and that the general deposit balance of that bank in the hands of the Norfolk correspondent was impressed with a trust. If, as we hold, the relationship of debtor and creditor never arose in the case at bar, then we find nothing in the *Pennington Case* to sustain the contention of the appellee.

It is true that the trust was established on the ground of the insolvency of the collecting bank, known to its executive officers at the time when the collection was received, but it does not follow that if the collection had been sent, as in the instant case, under instructions to *remit immediately the amount of the checks by shipment of currency, to the forwarding bank or by means of a draft drawn by the collecting bank* upon *some other bank* with which *it had funds upon deposit,* the court would have held that the collecting bank did not hold the proceeds of the checks as trustee.

3

The case of *Miller* v. *Norton & Smith*, 114 Va. 609, 77 S. E. 452, likewise fails to sustain the contention of the appellee.

In this case, the court was dealing with an insolvent *forwarding* bank and not an insolvent *collecting* bank. Unlike the instant case, there was no question of special agency, and Miller intended, after the check was collected, to let the proceeds remain in bank as a general deposit. The real question involved was whether or not before the collection was complete the forwarding bank should be regarded as a holder of the check for value, or as a mere agent for collection. The court held that it was an agent because it had not given value; and that the deposit when made, being general, the beneficial ownership of the money vested in the bank and that the relationship between it and the depositor became that of debtor and creditor.

Among the cases from other jurisdictions, relied on by the appellees, which do sustain his contention, may be mentioned the following: *First National Bank* v. *Davis*, 114 N. C. 343, 19 S. E. 280, 41 Am. St. Rep. 795; *Bowman* v. *First National Bank*, 9 Wash. 614, 38 Pac. 211, 43 Am. St. Rep. 870; *People* v. *Merchant's & Mechanic's Bank*, 78 N. Y. 269, 34 Am. Rep. 532; *Sayles* v. *Cox*, 95 Tenn. 579, 32 S. W. 626, 32 L. R. A. 523, 49 Am. St. Rep. 940; *Akin* v. *Jones*, 93 Tenn. 353, 27 S. W. 669, 25 L. R. A. 523, 42 Am. St. Rep. 921; *Central Trust Co. of Ill.* v. *Hanover Trust Co.*, 342 Mass. 265, 136 N. E. 336, and others.

In *First National Bank* v. *Davis*, 114 N. C. 343, 19 S. E. 280, 41 Am. St. Rep. 795, *supra*, unlike the instant case, there was no agreement between the forwarding and the receiving bank. The Bank of New Hanover was in the habit of receiving from the First National Bank of Richmond checks and other evidences of indebtedness for collection, charging for its services

as collecting agent and remitting daily the proceeds of its collections.   The money and checks received and collected were not kept separate, but were mingled together in one general fund with the other moneys and property of the failed bank.   The cashier of the New Hanover Bank, for which Davis was afterwards appointed receiver, had no knowledge of its insolvency until it had actually failed.   The court held that the two banks were presumed to have entered into an implied agreement that the business would be transacted in accordance with the established custom in such business, which permitted the collecting bank to put all collections made by it into the general fund of the bank, and use them from day to day in the transaction of their current business, and when the time came for making remittance to send the forwarding bank money from its general fund, or its cashier's check for the amount due.

The court also held that the relation existing between the two banks, up to the time the checks were cashed, was that of principal and agent, and that immediately thereafter there was substituted as to such cash the relation of debtor and creditor.

[8] In the instant case, the contract between the forwarding and receiving banks did not arise out of a custom but out of an agreement between them by which the collecting bank would cause the checks to be presented to it for payment, and immediately upon payment remit the amount of the checks so paid to the forwarding bank by a shipment of currency, or by a draft upon some other bank with which it had funds upon deposit.   Under these circumstances, it was not contemplated that the receiving bank should become the owner of the specific money collected, and it had no express or implied contract right to lend, or otherwise use it in its banking business.   It was a special

agent of the forwarding bank to collect the checks and remit the money immediately, and the relationship of debtor and creditor did not arise.  *Board of Supervisors* v. *Prince Edward-Lunenburg County Bank, et als,* 138 Va. 333, 121 S. E. 903.

[9] In determining whether or not the failed bank is a debtor or a trustee, the court may well look to the intention of the parties.  If the forwarding bank intends to leave the money in the hands of the collecting bank, to be used by it in its usual course of business, it intends to become a general depositor and accepts the bank as a debtor.  If on the other hand the forwarding bank, as in the instant case, does not intend it to be so used, and demands that the proceeds of the checks be immediately returned to it, it does not become a depositor, but simply entrusts the bank with the money for a special purpose, and the collecting bank becomes a trustee and a court of equity will impress with a trust the general funds in the hands of the trustee, in which the trust fund is included.

So far as the *Davis Case, supra,* and the other cases from other jurisdictions, relied on by the appellee, are in conflict with the views herein expressed, we decline, for the reasons indicated, to follow them.  In this situation a further review of these cases is deemed unnecessary.

Having sustained the petitioner's first and second assignments of error, it is unnecessary to discuss the third assignment; since appellant agrees that in the settlement of accounts the amount in its hands should be credited upon its claim as though it were a part payment thereon.

Our conclusion is that the Prince Edward-Lunenburg County Bank was a special agent collecting checks for the Federal Reserve Bank of Richmond.  In equity and good conscience, the money thus in its hands was

at all times the property of the Federal Reserve Bank of Richmond. This money passed from the agent's hands to the hands of the receiver impressed with a trust, and is sufficiently identified, since it appears that an amount equal to the amount held for the Federal Reserve Bank of Richmond was in its hands from January 5, 1922, until its failure.

[10] A check is not payment until the check is paid, and the drawing of a draft by the Prince Edward-Lunenburg County Bank to the order of the Federal Reserve Bank of Richmond and mailing the same to the last mentioned bank in no way affected the trust already impressed. While the check was not an assignment of the fund against which it was drawn, as between the drawer of the check and the person who gave value for it, it was an equitable assignment of the fund *pro tanto*. Daniel on Negotiable Instr., sec. 1643, p. 1852.

The decree complained of will be reversed and set aside, and the decree will be entered here which the lower court ought to have entered, adjudging that the receiver, H. D. Peters, out of the amount now in his hands, pay to the Federal Reserve Bank of Richmond the full sum of $2,295.10, with interest thereon from the 6th day of January, 1922, till paid, less the sum of $505.45, with interest from the 6th day of January, 1922, till paid, and the costs by the Federal Reserve Bank of Richmond in this suit expended.

*Reversed and final judgment.*