# Staunton

## B. C. Powers v. B. S. Powers.

September 13, 1939.*

Record No. 2137.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston
and Spratley, JJ.

*Rehearing refused November 20, 1939.

*S. H. & Geo. C. Sutherland,* for the appellant.

*W. L. Rush* and *A. M. Phipps,* for the appellee.

GREGORY, J., delivered the opinion of the court.

B. C. Powers was the ward of his older brother, B. S. Powers, and the latter, as such, received the custody of cer-

tain funds which belonged to his ward. No other property came into his hands.

The ward reached his majority last year and the funds were turned over to him by the guardian, who on March 26, 1938, made a final settlement of his fiduciary account before the proper commissioner of accounts for Dickenson county.

Before the report was confirmed by the court B. C. Powers filed exceptions thereto which were heard after a jury had been impaneled to try the facts in accordance with the statute (Code, section 5428). The jury, after hearing the evidence and receiving instructions from the court, rendered a verdict in favor of B. S. Powers, the former guardian. The verdict was approved and the settlement confirmed by the trial court.

There were three particular items in controversy. One item of $820.12 was represented by a time certificate of deposit in the Dickenson County Bank and another item was represented by a savings account in the same bank of $661.71 which had been deposited by the father of B. C. Powers. The bank closed and went into the hands of a receiver, causing a loss to the ward. The third item was a note for $300 which the ward claimed as a gift from a brother who later passed away.

The father of the ward died in 1929 and B. S. Powers qualified as administrator and distributed the estate to those entitled thereto. It consisted of more than $11,000 on deposit in two banks, of which about $8,000 was in the Dickenson County Bank. There was due B. C. Powers as his part $820.12 but he was under 21 years of age and the money could not be paid to him directly. B. S. Powers then qualified as guardian for his brother, and not being able to invest this fund with proper security, he deposited it in the Dickenson County Bank and received therefor a time certificate of deposit bearing four per cent payable in 12 months.

Several years prior to his death the father opened a savings account with the same bank in the name of and for the benefit of B. C. Powers. This account drew interest at four per cent. After the father died and B. S. Powers had been

appointed guardian he did not disturb the savings account which at the time the bank closed amounted to $661.71.

There is no evidence upon which the item of $300 sought to be charged to the guardian can be sustained. It was disallowed by the trial court and justly so. We need consider only the two items on deposit in the bank.

There are but two points involved. The first one is, upon whom is the burden of proof when exceptions are made to a guardian's report which has been approved by the commissioner of accounts? Second, is a purchase of a time certificate of deposit in a bank the exercise of due diligence by a guardian in investing the ward's money?

The trial court ruled that the guardian's report, approved by the commissioner of accounts was *prima facie* correct and the burden of proof rested upon the ward to show its incorrectness. The ward insisted that the burden of proof was upon the guardian to show that he acted with prudence and discretion in dealing with the funds; that it was his duty to lend only upon good security, and if he failed to take good security and the money was lost, he was liable to the ward regardless of whether he exercised due diligence or not.

The court gave these instructions: "The court instructs the jury that the only question for you to consider is, whether the money belonging to the ward was lost through the negligence of the guardian, and under the law the burden is on the plaintiff to prove such negligence by a preponderance of the evidence and unless he has done so you will find for the defendant.

"The court tells the jury that if they believe from the evidence that B. S. Powers, guardian of Clyde Powers, in good faith and in the exercise of a fair discretion deposited his ward's money in the Dickenson County Bank, Inc., which was then regarded by careful prudent business men as a safe and solvent institution, then they will find for the defendant."

We are of opinion that the law as laid down in the instructions granted was applicable to the case.

■ In *Young* v. *Bowen*, 131 Va. 401, 108 S. E. 866, we expressly held that the *ex parte* settlements of the commissioner of accounts are presumed to be correct until surcharged and falsified, and not only the duty of specifying errors, but also the *onus probandi* devolves on the party complaining. Cited to sustain the rule are *Peale* v. *Hickle*, 9 Gratt. (50 Va.) 437; *Corbin* v. *Mills' Ex'rs*, 19 Gratt. (60 Va.) 438.

In *Koteen* v. *Bickers*, 163 Va. 676, 177 S. E. 904, it was held: "Even when proof of *devastavit* is necessary it may be supplied by an *ex parte* settlement, for such settlement is *prima facie* evidence of matters there set out." (Citing cases.)

We are of opinion that the burden of proof was properly placed by the court below upon the exceptant. The settlement before the commissioner of accounts was *prima facie* correct. One charging error must sustain it.

Was the guardian liable for the loss sustained by the closing of the bank in which he had allowed the ward's funds to remain as an investment?

It is claimed that the guardian was an insurer as to these funds because his conduct in permitting them to remain in the bank was equivalent to an investment of them without security, which constituted a lack of due diligence as a matter of law.

What is the duty owed by the guardian to the ward in respect to the latter's funds? Is the guardian permitted to invest them in a time certificate and a savings account in a bank, both bearing four per cent interest?

In the early days when a fiduciary was supposed to take upon himself the trust as a matter of "honor, conscience, friendship or humanity" and without any compensation for his services, the relation was controlled by principles analogous to those applicable to the law of "bailments without reward." He was bound only to exercise good faith and reasonable diligence. Consequently, he was liable only for gross negligence. It was said then that the rules as to liability "should not be laid down with such strictness as to

strike terror into mankind acting for the benefit of others and not their own".

In former days it was argued that a trust "is an office necessary in the concerns between man and man and which if faithfully discharged is attended with no small degree of trouble and anxiety, it is an act of great kindness in anyone to accept it. To add hazard or risk to that trouble and to subject a trustee to losses which he could not foresee would be a manifest hardship, and would be deterring every one from accepting so necessary an office." The court always treated trustees acting in good faith with great tenderness. The court in the early case of *Elliott* v. *Carter,* 9 Gratt. (50 Va.) 541, from which the quotations above were taken, laid down this rule as to liability of trustees: "Where a trustee has acted in good faith, in the exercise of a fair discretion, and in the same manner in which he probably would have acted if the subject had been his own property and not held in trust, he ought not to be held responsible for any losses accruing in the management of the trust funds."

The rule is substantially the same today. However, the relation is no longer analogous to that of a "bailment without reward", nor must the negligence be gross before there may be liability. That one in this day and time accepts a trust as a matter of "honor, conscience, friendship or humanity" is largely fiction for most fiduciary matters are now in the hands of professional trustees, such as banking and trust companies and other corporations and some individuals who make a special business of acting as trustees, fiduciaries, etc., for profit. Generally it is no longer a matter of "honor or friendship" but purely a business transaction. Therefore, it would seem that the reason for treating trustees with "great tenderness" no longer exists. Their transactions should be viewed by the courts, not with "great tenderness" but as all other business affairs of men. They should be shown no preference.

If there previously had existed in Virginia the rule that a fiduciary was a mere stakeholder or bailee as suggested in *Elliott* v. *Carter, supra,* it was abrogated by *Leake's Ex'r* v.

*Leake,* 75 Va. 792, when Judge Staples, speaking for the court, had this to say: "It is not legally correct to say that the executor here or in any case is a mere stakeholder of the assets of the estate. With respect to such assets, the executor is something more than a stakeholder; he is a trustee, having the same property in such assets as the testator had when alive. He holds the legal title; he may sell and dispose of the personal effects, and they cannot be followed by creditors and legatees except in cases of fraud and collusion. Clothing the executor with important powers, the law exacts from him proper care and diligence in the management of the estate

"If he has funds in his hands which cannot be paid out to the parties entitled, it is his duty to invest in safe interest-bearing securities. If he is unwilling to assume any risk, the courts are always open to him for guidance and instruction."

 The rule as to liability of a fiduciary in Virginia is founded upon the law of negligence. Judge Harrison in his work, Wills and Administration, Vol. 1, page 705, says: "The inquiry in every case in which it is sought to fix a liability upon a fiduciary is: 1. Did he act within the scope of his powers and duties? 2. Did he act in good faith? 3. Did he act with ordinary prudence? If he did so act, he is not responsible for the consequences of the act, though it result in the loss of the trust fund, or some part of it."

 We have lately restated the rule in *Harris* v. *Citizens Bank & Trust Company,* 172 Va. 111, 200 S. E. 652, where Mr. Justice Holt speaking for the court said: "The standard by which the conduct of trustees, executors and other fiduciaries is to be measured has been many times stated and restated, both in this State and elsewhere. They are required to do those things which a man of reasonable intelligence and prudence would be expected to do in the management of his own affairs, but this rule, like most rules, is to be construed in the light of the conditions obtaining when it is applied."

In *Clemons* v. *Dennis,* 165 Va. 18, 181 S. E. 387, Mr. Chief Justice Campbell, on behalf of the court, restated the rule again. That case from a factual standpoint is not unlike the case at bar. There suit was instituted against the guardian for money of the ward deposited by the guardian in a bank which subsequently became insolvent. The money was deposited in a special savings account. That the guardian was ignorant of the failing condition of the bank was shown by the fact that he made an individual deposit on the last day the bank was open for business. We held that there was no liability on the guardian because it was shown that he exercised reasonable prudence in connection with the funds.

In *Koteen* v. *Bickers, supra,* we held that whether investments, other than those enumerated in Code, section 5431, are such as a reasonably prudent man would make is a question of fact. We also held that when a fiduciary invests in those statutory subjects he is relieved from liability, but it is not imperative that he select one of the investments there designated. He may make some other investment and if he exercises the proper care and caution and a loss occurs he is not liable.

Judge Harrison in his work, Wills and Administration, Vol. 1, page 702, says: "The statute of Virginia furnishes immunity to the Virginia fiduciary who invests according to the provisions of the statute, and the reason for departing therefrom should be very urgent, although, as heretofore pointed out, the statute is purely permissive."

Again the same author at page 696 says: "Under modern conditions the personal representative is not only justified but it is altogether proper for him to deposit the moneys of the estate in a bank, which he believes to be solvent. * * * ."

No attempt has been made to exhaust the Virginia law on the subject. The authorities cited are deemed ample to sustain the general rule as to the liability of guardians where loss occurs in the investment of funds belonging to the ward.

█ We know of no law, statutory or otherwise, which requires guardianship funds to be invested only in securities protected by a surety or secured by some form of lien.

Let us advert to the facts and ascertain if there was sufficient evidence to sustain the finding of the jury that the guardian exercised the proper degree of caution and diligence in his investment of the moneys involved here. The only evidence which tends to show any carelessness on the part of the guardian was a statement made by his mother to him to the effect that she was taking her money from the bank. She said to him: "My business is to take my money out of that bank and I want you to go yourself and save my baby boy's (the ward)."

The information came to the mother through her son-in-law. He had sent a check on the bank to the First National Exchange Bank of Roanoke, Virginia, and the latter bank refused to honor it. He then told his mother-in-law and she in turn warned her son, the guardian. After the guardian had been told these things he immediately made inquiry about the financial standing of the bank. He sought advice from Sidney Sutherland who was a surety on his guardianship bond. He told Sutherland, who was a banker and a man of business affairs in the community, what his mother had said about the bank. Sutherland told him the bank was in the best condition it had been in for several years and his advice was to leave the money in the bank. Practically all of the business men of the town of Clinchco had money in the bank.

At the time the bank closed the guardian had his personal funds there. He had $600 on time certificate and $300 on checking account and a week before the bank closed he deposited $235 of his individual money in the bank.

█ All of this testimony went to the jury whose duty it was to determine the question of fact,—whether the guardian had exercised due diligence in respect to the funds. They resolved the question in favor of the guardian. Their verdict, under well recognized principles, will not now be disturbed.

The law as given in the instructions granted was applicable and suitable. The burden was upon the exceptant to show a lack of diligence and caution on the part of the guardian. The jury resolved the question against him. No reversible error appears, and therefore the decree is affirmed.

*Affirmed.*