## CIRCUIT COURT OF FAIRFAX COUNTY

Harry Clayton Cook, Jr.

v.

The 1031 Exchange Corp. et al.

November 12, 1992

Case No. (Law) 116304

BY JUDGE GERALD BRUCE LEE

This matter is before the Court upon Plaintiff's Motion for Partial Summary Judgment pursuant to Rule 3:18 of the Supreme Court of Virginia. Plaintiff, Harry Clayton Cook, Jr., moves the court to enter summary judgment against The 1031 Exchange Corporation ("Corporation") on Count I and against, Charles Ford Reddick, Esquire, and the Corporation on Count III of the Amended Motion for Judgment. The court, after due consideration of the briefs and arguments of counsel, grants Cook's Motion for Partial Summary Judgment against The Corporation and Reddick for the reasons stated below.

Reddick, an attorney, is managing agent, director and president of the Corporation. The Corporation functions as a qualified intermediary in tax deferred investment property exchanges under § 1031 of the Internal Revenue Code. Section 1031 permits a taxpayer to sell an investment property and defer the tax consequences, provided the taxpayer invests in a replacement property within 180 days.

The facts in this case are undisputed. Cook sold an investment property and entered into a Deferred Exchange Trust Agreement with the Corporation on September 17, 1991. Cook was given a brochure authored by Reddick. The brochure contains certain representations which are key to the motion for partial summary judgment.

> Over the last several years *lawyer Charles Ford Reddick* of Reston, Virginia, has assisted many hundreds of property

owners with their exchange transactions. . . . On July 2, 1990, the effective date of the new Rules, Mr. Reddick announced the formation of The 1031 Exchange Corp. to assist those wishing to perform a Tax-Deferred Exchange for their investment or rental property or properties.

Further, the brochure explains how the trust funds are managed.

All of the Buyer's funds that would be paid by the settlement office to the Exchanger as seller in a normal sale are instead paid to The 1031 Exchange Corp. as *Trustee*. It holds these funds in an *interest-bearing exchange checking account* and later disburses them either (A) to acquire new Replacement Property designated by the Exchanger or (B) to the Exchanger upon his direction at the termination of the trust.

Plaintiff's Exhibit A, pp. 1–3.

Pursuant to the trust agreement, Cook agreed to entrust $660,000.00 to the Corporation for future investment in rental properties. The trust agreement requires the Corporation to "invest and reinvest the [Trust] Funds in money-market funds, accounts with banks, savings and loan associations, mortgage securities or securities of the United States government." The trust agreement also states that trust funds would earn interest at a rate of six percent. Cook designated three properties for purchase with the entrusted funds. The Corporation closed on two of the three properties, resulting in a $177,000 balance in Cook's trust account as of January 1992.

On or about January 20, 1992, Cook requested the balance of his trust funds. On or about January 27, 1992, Cook was advised by the Corporation's counsel that the corporation did not have sufficient funds to comply with his request. As a result, Cook was unable to purchase a third property and will be taxed capital gains on $177,000.00. On June 29, 1992, the Corporation paid $19,565.30 to Cook without prejudice to his right of action against the Corporation or Reddick. Therefore, as of June 29, 1992, the Corporation owed Cook $157,434.70 exclusive of interest, costs or fees.

Reddick and the Corporation admit that Reddick was the sole person responsible for investing funds entrusted to the corporation (Exhibit 2, Defendant Corporation's Response to Cook's Interrogatory No. 6., Exhibit No. 3. Reddick's Answer to Interrogatory No. 8). The

Corporation admits that it owes Cook $157,434.70, plus $11,641.36 interest. Accordingly, the Court will enter partial summary judgment for Cook against the Corporation on Count I, Breach of Contract, and Count III, Conversion of Funds, totaling $169,076.06.

In addition, Cook moves for partial summary judgment against Reddick, personally for breach of contract and conversion of funds.

Count III of the Amended Motion for Judgment charges Reddick and The 1031 Corporation with the conversion of Cook's trust funds. The Supreme Court has defined conversion as:

> Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved, the plaintiff is entitled to recover, irrespective of good or bad faith, care or negligence, knowledge or ignorance.

*Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 76, 92 S.E.2d 359, 365 (1956); *see also Buckeye Nat'l Bank v. Huff*, 114 Va. 1, 11, 75 S.E. 769, 772 (1912).

The Corporation held Cook's funds as trustee. Under the trust agreement the Corporation is required to disburse Cook's funds to purchase properties. The Corporation cannot account for Cook's funds and offers no legal justification for its failure to comply with the terms of the trust agreement. Cook has been wrongfully deprived of his property; thus the Corporation is liable for conversion of funds.

Reddick argues that Cook has failed to show evidence of his criminal wrongdoing or personal misappropriation of funds. Reddick has asserted his Fifth Amendment right against self-incrimination when asked what he did with Cook's funds. In order to establish conversion it is not necessary to show that the wrongdoer applied the property to his own use, and the person whose property has been wrongfully withheld is "entitled to recover, *irrespective of good or bad faith, care or negligence or ignorance.*" *Id.* (Emphasis added.) There is no merit to Reddick's contention that material facts are in dispute.

Reddick and the Corporation are jointly and severally liable for conversion. When a corporation acts as trustee, an officer or director who participates in converting entrusted funds is *automatically* liable. *See* 3A *Fletcher Cyclopedia of the Law of Private Corporations*

§ 1140 (1986). Directors of trust companies acting in fiduciary capacities are also liable for breach of duty. *Hirsch v. Phily*, 4 N.J. 408, 73 A.2d 173, 177 (1950); *McGlynn v. Schultz*, 95 N.J. Super. 412, 231 A.2d 386, 388 (1967) (awarding judgment against officers and directors of corporate trustee that lost funds entrusted to it and holding that the officers and directors were personally liable for the corporation's conversion, irrespective of any good faith defense) *cert. denied* 50 N.J. 409, 234 A.2d 901 (1967); *Strauss v. United States Fidelity & Guaranty Company*, 63 F.2d 174, 178 (4th Cir.) (all persons who knowingly participate and aid in any violation of duty laid by equity upon a trustee, are equally liable with the trustee to respond to the liabilities which arise therefrom.) *cert denied*, 289 U.S. 747 (1933). *See also*, Cook's Brief In Support of Motion for Partial Summary Judgment at pp. 4–5. Reddick and the Corporation admit Reddick is an officer and director of the Corporation and was solely responsible for investing Cook's funds. Therefore, Reddick is personally liable for conversion. Cook has established that partial summary judgment is proper. Accordingly, the court will grant Cook's Motion for Partial Summary Judgment against Reddick for conversion in the amount of $169,076.06 plus interest on the entire amount at the legal judgment rate from March 10, 1992.