**AIRLINES REPORTING
CORP., Plaintiff,**

v.

**Michael PISHVAIAN, et
al., Defendants.**

**No. CIV. A. 00–2133–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 8, 2001.

Charles Erik Gustafson, Esquire, LeClair Ryan, Alexandria, VA, for Plaintiffs or Petitioners.

Richard H. Gins, Esquire, Steven Harold Greenfeld, Esquire, Gins & Greenfeld P.C., Washington, DC, for Defendants or Respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue on plaintiff's motion for summary judgment in this diversity action are the following questions:

(i) whether a travel agency is liable to plaintiff for conversion of airline ticket sales proceeds where the agreement between plaintiff and the travel agency permitted the agency to commingle the proceeds with other agency funds;

(ii) whether a travel agency is liable to plaintiff for conversion of blank ticket stock where the ticket stock is held in trust by the travel agency and then disposed of in a manner not authorized by the agreement;

(iii) whether the defendant, who is the sole officer and shareholder of the travel agency, is liable for any conversion committed by the travel agency, acting through its employee; and

(iv) whether the defendant is liable for any breach of a fiduciary duty owed to the plaintiff under the agreement.

### I. Facts [1]

This action is brought by plaintiff Airlines Reporting Corporation ("ARC"), a Delaware corporation with its principal place of business in Arlington, Virginia, to recover losses it alleges were caused by defendant Michael Pishvaian. Defendant holds 100% ownership interest in C.W. Travel, Inc., a Maryland corporation currently in Bankruptcy proceedings. In addition, defendant serves as C.W. Travel's sole officer and director.

In November 1996, C.W. Travel applied to ARC for accreditation as a travel agen-

---

1. These facts are taken from the parties' submission of stipulated facts.

cy—a predicate step to entering into an Airline Reporting Agreement ("ARA"), through which ARC provides blank airline ticket stock to a travel agency for issuance to its customers. In C.W. Travel's application for accreditation, defendant stated, *inter alia*, that only he and Chris Franklin, the manager of C.W. Travel, would have access to the blank ticket stock and that defendant would be involved in the day-to-day operations of the agency. Based on these representations and a review of C.W. Travel's application, ARC provided C.W. Travel with accreditation as a travel agency, and accordingly, the parties entered into an ARA.

Under the ARA, ARC provided C.W. Travel with blank ticket stock, which C.W. Travel was to hold in trust.[2] In addition, the ARA required C.W. Travel to prepare and submit to ARC weekly sales reports listing all ticket stock issued to customers during that week. Based on these sales reports, ARC was empowered to withdraw the sales proceeds, minus a commission, from a bank account that C.W. Travel designated.[3] C.W. Travel was permitted under the ARA to commingle the proceeds from the airline ticket sales with all other funds of C.W. Travel, provided sufficient funds remained for withdrawal for any ticket stock issued to customers during the previous week.

Throughout the term of the ARA, defendant did not work at C.W. Travel, but instead worked full-time at a nearby restaurant. Defendant only visited the C.W. Travel office between one to three times a week. In the course of the visits, he met with the manager, signed checks, and discussed the weekly sales reports. In February 1999, Rebecca Price replaced Chris Franklin as manager of C.W. Travel. Price was given complete control over the issuance of the ticket stock, as well as sole responsibility for reporting sales and remitting proceeds to ARC. She became the primary contact between C.W. Travel and ARC. No notice of the personnel change was given to ARC, despite a provision in the ARA that requires travel agencies to submit a Miscellaneous Change Form and Personal History Form to notify ARC in the event of any change in the identity of employees with access to the blank ticket stock.[4]

In January 2000, ARC initiated an audit of C.W. Travel because of irregularities it had discovered in C.W. Travel's weekly sales reports. This audit revealed that Price had engaged in a practice of issuing tickets and failing to report or pay for those tickets. According to this audit, ARC discovered that Price was routinely withholding certain ticket sales from the weekly reports to prevent ARC from debiting the proceeds of these sales from

2. Section XII(D) of the ARA provides that
   All ARC traffic documents ... supplied to [C.W. Travel] shall be held in trust for ARC by the Agent until issued to the Agent's clients to cover transportation or ancillary services purchases, or until otherwise satisfactorily accounted for to ARC or the carrier, and shall be surrendered upon demand ... to ARC pursuant to this agreement.

3. Section VII(B) of the ARA requires that C.W. Travel
   designate a bank account for the benefit of ARC ... for the deposit of (1) the proceeds

of the sales of air transportation and ancillary services for which ARC traffic documents were issued, and (2) such funds as may be required to pay any other amount which ARC is authorized to draft from the account. [C.W. Travel] recognizes that the proceeds of the sales, less ... commission, on these ARC traffic documents are the property of the carrier and shall be held in trust until accounted for to the carrier.

4. Defendant claims that ARC was notified by fax, but ARC has no record of such a notice.

C.W. Travel's bank account.[5] In other words, Price would sell tickets and collect money for the sale of the tickets, but would fail to report the sale to ARC. These funds were often used by C.W. Travel to pay other, more immediate obligations of C.W. Travel. While defendant authorized these payments by signing the requisite checks, he was unaware that a debt to ARC had been incurred and not paid. Apart from signing checks and discussing the weekly sales reports, defendant took no action relating to the sale of airline tickets or the filing of the weekly reports. During defendant's visits to C.W. Travel, Price never told defendant that the sales reports issued to ARC were inaccurate. Yet, Price had told defendant on more than one occasion that she was overwhelmed with her workload and that C.W. Travel was encountering financial difficulty. Defendant responded by hiring an additional travel agent to assist Price. When defendant did become aware of the results of ARC's audit, he immediately stopped further sales of tickets. Moreover, upon ARC's request, defendant returned to ARC all remaining blank ticket stock. On February 8, 2000, ARC terminated the ARA.

The record reflects that Price's failure to report the tickets that had been issued to customers in the weekly reports to ARC

caused losses to ARC of between $400,000 and $500,000. Furthermore, ARC suffered an additional $80,000 loss owing to C.W. Travel's failure to make funds available for ticket sales that it had reported to ARC. On December 22, 2000, plaintiff filed an eight-count complaint[6] against defendants Pishvaian, Rebecca Price,[7] and Michael Price.[8] At issue on plaintiff's motion for partial summary judgment are Count II (breach of fiduciary duty) and Count III (conversion). Following oral argument on plaintiff's motion, the summary judgment motion was taken under advisement, and the parties were directed to file supplemental memoranda. *See ARC v. Pishvaian*, C.A. No. 00–2133–A (E.D.Va. June 15, 2001). The supplemental memoranda having been filed, the matter is now ripe for resolution.

## II. Analysis

### A. Conversion

Plaintiff contends that the undisputed facts establish that defendant is liable to ARC for the conversion of (i) ARC's blank ticket stock and (ii) the proceeds from the sale of plaintiff's ticket stock not reported to ARC.

In Virginia,[9] conversion is "any distinct act of dominion wrongfully exerted

---

5. ARC learned of these discrepancies from Debit Memos generated by the airlines when a passenger flies on a ticket that was not previously reported to ARC in the agent's weekly sales report.

6. The eight-count complaint includes: (i) Count I—Breach of Contract; (ii) Count II—Breach of Fiduciary Duty; (iii) Count III—Conversion; (iv) Count IV—Fraud; (v) Count V—Statutory Conspiracy; (vi) Count VI—Common Law Conspiracy (Fraud); (vii) Count VII—Common Law Conspiracy (Conversion); and (viii) Count VIII—Unjust Enrichment.

7. An Order staying the proceedings against Rebecca Price was entered on February 26, 2001. *See Airlines Reporting Corporation v. Pishvaian*, C.A. No. 00–2133–A (E.D.Va. Feb.26, 2001).

8. A consent Order was entered on February 26, 2001, dismissing all causes of action against Michael Price. *See Airlines Reporting Corporation v. Pishvaian*, C.A. No. 00–2133–A (E.D.Va. Feb.26, 2001).

9. In this diversity action, the choice of law principles of the forum state, Virginia, govern. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477

over the property of another, and in denial of his rights, or inconsistent therewith." *See Federal Ins. Co. v. Smith*, 144 F.Supp.2d 507 (E.D.Va. 2001) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359, 365 (1956)). To assert a claim for conversion, a plaintiff must prove by a preponderance of the evidence (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession. *See Universal*, 92 S.E.2d at 365.

■ Plaintiff contends that this two-part test is met here with regard to both the proceeds and the ticket stock because the ARA explicitly provided that C.W. Travel held in trust for ARC both the proceeds from the sale of the ticket stock, and the ticket stock. Yet, whether a trust relationship is formed does not end with the citation of isolated provisions in the parties' agreement. Instead, "[t]he Court has an obligation to go beyond the terminology used in an effort to determine the substance of the relationship between the parties." [10] Accordingly, a review of the en-

tire agreement is necessary to ascertain whether the proceeds from the sale of airline tickets and the ticket stock were held in trust for ARC. A showing that the ticket stock and proceeds were held in trust is required for plaintiff to establish the first element of conversion, namely ownership or right to possession of the ticket stock and proceeds. Absent such a showing, a claim for conversion fails, and plaintiff may show, at most, a debtor-creditor relationship.

### 1. Proceeds from Ticket Sales

■ A review of the ARA compels the conclusion that the relationship between the parties with respect to the ticket sales proceeds is not one of trust, but rather a debtor-creditor relationship. This is so because, with respect to ticket sales proceeds, critical aspects of a trust relationship under Virginia law are absent from the agreement. Specifically, contrary to Virginia law, the ARA (i) does not prohibit—indeed allows—permissive commingling of "trust" assets with general assets of the agency; and (ii) does not contain restrictions on the use of these funds.[11] The

---

(1941). Under Virginia's choice of law rules, a tort claim is to be governed by the law of the place of the wrong, the *lex loci delicti*. *See Jones v. R.S. Jones and Assoc., Inc.*, 246 Va. 3, 431 S.E.2d 33, 34 (1993); *Buchanan v. Doe*, 246 Va. 67, 431 S.E.2d 289, 291 (1993). And, in Virginia, it is well-settled that the place of the injury supplies the governing law in tort actions. *See Lachman v. Pennsylvania Greyhound Lines, Inc.*, 160 F.2d 496 (4th Cir. 1947) (citing *C.I.T. Corp. v. Guy*, 170 Va. 16, 195 S.E. 659 (1938)). These principles, applied here, compel the conclusion that Virginia law applies to the conversion and breach of fiduciary duty claims because the injury—the loss to ARC—occurred in Virginia.

**10.** *Airlines Reporting Corp. v. Inter Transit Travel, Inc.*, 884 F.Supp. 83, 86 (E.D.N.Y. 1995); *see also In re Shulman Transport Enterprises, Inc.*, 744 F.2d 293, 295 (2nd Cir.

1984) ("A debtor does not become the agent of his creditor simply because he is called an agent."); *In re Morales Travel Agency*, 667 F.2d 1069, 1072 (1st Cir.1981) (It is well established that "[i]f a ritualistic incantation of trust language were deemed conclusive, it would be a simple matter for one creditor, at the expense of others, to circumvent the rules pertaining to the creation of bona fide security interests").

**11.** *See Leake v. Leake*, 75 Va. 792, 1881 WL 6308, at *6 (1881) (noting that preventing commingling of funds tends "to discourage and prevent the application of trust funds to the private purposes of the trustee—a practice which, while it endangers the safety of the property, tends to further faithlessness, and to ultimate dishonesty and corruption"); *see also Swineford v. Virginia Trust Co.*, 154 Va. 751, 760, 152 S.E. 350 (1930) (noting that

absence of these requirements in the ARA reflects an apparent lack of concern regarding defendant's handling of the ticket sales proceeds that is fatal to any claim that the ARA creates a trust as to the proceeds. Thus, in essence, the agreement establishes a debt for the price of the ticket sold that becomes due and owing, not upon sale of the ticket and the collection of proceeds, but instead at the end of each week when a report is filed that documents the ticket sales by C.W. Travel.[12]

█ Plaintiff seeks to avoid this result by arguing that Virginia law treats commingling of assets differently from other jurisdictions. Specifically, plaintiff cites *Federal Reserve Bank of Richmond v. Peters,* 139 Va. 45, 123 S.E. 379 (1924) for the proposition that when the trustee commingles trust assets with other assets, the trust is extended to "the whole mass of money." *Id.* at 382. This argument is unpersuasive, because *Peters* stands for the sensible, but inapposite, proposition that a trustee cannot escape liability for conduct in derogation of the trust. *Cf. First Nat'l Bank v. Commercial Bank & Trust Co.,* 163 Va. 162, 170–71, 175 S.E. 775 (1934) (noting that trustee cannot change nature of deposit from trust to creditor-debtor by commingling trust funds with its own). This proposition is inapplicable here because the ARA, by its terms (and as reflected in its performance), permitted the commingling of

funds. There is, in short, nothing in the ARA that prevented defendant from utilizing the ticket sales proceeds to pay for C.W. Travel's other obligations. And defendant, in fact, did precisely this. Therefore, because plaintiff has not shown ownership or right to possession of the ticket sales proceeds or any wrongful act of dominion over such proceeds, it follows that summary judgment on the claim for conversion of the ticket sales proceeds cannot be granted on this record.

### 2. Ticket Stock

█ Plaintiff's argument as to the blank ticket stock stands on different footing. Unlike the proceeds, the ticket stock was plainly held in trust for plaintiff until properly issued to customers. This is so because the ticket stock was to be (i) held in trust, by the terms of the ARA; (ii) surrendered to plaintiff on demand; and (iii) issued to customers only in accordance with the provisions of the ARA. *See supra* note 2. These factors are sufficient to establish plaintiff's ownership, and right to possession, of the ticket stock. Furthermore, plaintiff has also established the second prong of the conversion test—that C.W. Travel's conduct wrongfully deprived plaintiff of possession of the ticket stock. *See Universal,* 92 S.E.2d at 365. In this regard, the ticket stock was converted when it was issued to customers contrary to the procedures set forth in the ARA.[13]

fundamental principle of a trust is that limits are imposed on the trustee's use of trust funds and that "trustee has no right to derive any benefit or advantage from the trust fund").

**12.** *See, e.g., In re Morales Travel Agency,* 667 F.2d 1069, 1071 (1st Cir.1981) (finding that because the carrier was required to pay the price of the tickets sold rather than the amount received from customer, the proceeds from the sale was not held in trust); *Inter Transit Travel,* 884 F.Supp. at 86 (same).

**13.** Specifically, when Rebecca Price failed to submit weekly sales reports containing all ticket stock issued to customers, this caused C.W. Travel to fail to remit proper payment to plaintiff. In addition, defendant stated in the application for accreditation that only he and Chris Franklin would have access to the ticket stock. Defendant never updated this information when Rebecca Price became manager of C.W. Travel. The parties stipulated that the information on this form was important because it permits plaintiff to investigate the

Because the ticket stock was held in trust and because the record reflects C.W. Travel's wrongful exercise of dominion over the ticket stock that deprived ARC of its ownership rights, plaintiff has established a claim for C.W. Travel's conversion of the ticket stock. Yet, there remains the more difficult question whether defendant, as sole officer, director, shareholder of C.W. Travel, may be held liable for the agency's conversion of the ticket stock.

■ Plaintiff, relying chiefly on New York authority,[14] argues that defendant is liable himself for conversion, because he "set the stage" for C.W. Travel's conversion of the ticket stock when he failed (i) to notify plaintiff that Price would be given access to the ticket stock, and (ii) to ensure that Price understood the Industry Agents' Handbook. This argument is unpersuasive; under Virginia law, the facts in this case are insufficient to impose liability on defendant for the conversion of the ticket stock.

■ Under Virginia law, an officer or director of a corporation is liable only for those intentional torts he or she commits or authorizes on behalf of the corporation.[15] Although plaintiff need not show that defendant personally benefitted from the conversion, plaintiff must establish that defendant participated in, ratified, or otherwise authorized the conversion.[16] Plaintiff, on this record, has made no such showing. While defendant's conduct may be viewed in some sense as "setting the stage" for the conversion, this is insufficient to create liability for conversion of the ticket stock because Virginia law limits conversion to wrongful conduct that is "exerted over property in denial of the owner's right." *Universal*, 198 Va. at 75, 92 S.E.2d 359 (citations omitted). For example, in *Universal*, the Supreme Court of Virginia found appellee liable for conversion because contrary to the conditional sales contract he entered into to purchase his automobile, appellee failed to keep current on his monthly installments and sold the vehicle. *See id.* Thus, the Supreme Court of Virginia predicated a finding of conversion on appellee's wrongful exercise of dominion "over the vehicle inconsistent with the rights of appellant." *Id.* By contrast, in the case at bar, defendant here exerted no wrongful dominion over the ticket stock. While the parties may dispute whether there was compliance with all of the ARA's terms, the record contains no evidence that any of defendant's conduct was specifically directed at the converted ticket stock. Instructive here is defendant's contrasting conduct with respect to the ticket sales proceeds. In this regard, it is clear that defendant signed checks authorizing withdrawal of ticket sales proceeds to pay for C.W. Travel's other debts. In so doing, defendant plainly exercised dominion over the proceeds, and had the ARA prohibited, rather than sanctioned, such use of the proceeds, defendant would have been liable for conversion of the proceeds. Had defendant dealt

---

backgrounds of individuals who will have access to its valuable blank ticket stock.

**14.** *See Airlines Reporting Corp. v. Inter Transit Travel, Inc.,* 884 F.Supp. 83, 87 (E.D.N.Y. 1995) (imposing liability for conversion because director's conduct "set the stage for the misappropriation").

**15.** *See Sit–Set, A.G. v. Universal Jet Exch., Inc.,* 747 F.2d 921 (4th Cir.1984) (noting that

"[c]orporate officers may of course be liable jointly and severally with their corporation for obligations arising out of tortious conduct of the officers that subject the corporation to liability"); *Miller v. Quarles,* 242 Va. 343, 347, 410 S.E.2d 639 (1991) (same); *Cook v. 1031 Exchange Corp.,* 29 Va. Cir. 302 (1992) (same).

**16.** *See supra* note 14.

in a similarly direct fashion with the ticket stock, as he did with the tickets sales proceeds, say by issuing or specifically authorizing the issuance of the ticket stock in a manner contrary to the ARA, he would have been liable for conversion of such ticket stock because his conduct would constitute a wrongful exercise of dominion over the ticket stock. And this would be so even though defendant lacked knowledge of the conversion and believed in good faith that he had the authority to dispose of the ticket stock in that fashion. But dispositive here is that the current record reflects no acts by defendant directed specifically to the ticket stock. Given this, imposing liability on defendant on the basis of the existing record would be tantamount to holding corporate officers liable for conversion committed by the corporation acting through its employee merely because the officer negligently hired or supervised the errant employee. No Virginia case supports imposing liability on a corporate officer, director, or sole shareholder in these circumstances.[17] While there might be some circumstances where "setting the stage" would be sufficient to impose liability under Virginia law, no such circumstances are present in this summary judgment record. Thus, plaintiff's "set the stage" argument, which finds no support in existing Virginia law, seeks an expansion of Virginia law that is inappropriate, because "[federal courts] should not create or expand that State's public policy" when "trying to determine how the highest state court would interpret the law." *Wade v.*

*Danek Medical, Inc.,* 182 F.3d 281, 286 (4th Cir.1999). Accordingly, on the current record, plaintiff's motion for summary judgment on the claim for conversion must be denied.

**B. Breach of Fiduciary Duty**

Finally, plaintiff seeks summary judgment on its breach of fiduciary duty claim. The starting point of the analysis is the recognition that the ARA imposes a fiduciary duty on C.W. Travel to hold the blank ticket stock in trust for plaintiff. And because a corporation meets its fiduciary duties only through the actions of its officers and directors, defendant, as C.W. Travel's sole officer and director, can be held liable if he participates in, ratifies, or otherwise authorizes the corporation's breach of its fiduciary duty to plaintiff.[18] Specifically, defendant may be held liable if he fails to exercise the same degree of discretion in the management of a trust that a prudent man would exercise in his own affairs.[19] Put differently, defendant, responsible for ensuring that C.W. Travel meets its fiduciary obligations, has a "duty of good faith and full and fair disclosure of all material facts [to plaintiff], as well as an affirmative obligation to employ reasonable care to avoid misleading one with whom he deals." [20] In this regard, the parties dispute whether defendant's conduct was an exercise of good faith management of property held in trust for plaintiff.[21] This disputed issue is appropriately left for resolution at trial.

---

**17.** No claim is made that C.W. Travel's corporate veil should be pierced in connection with this conversion claim.

**18.** *See supra* note 14.

**19.** *See Powers v. Powers,* 174 Va. 164, 3 S.E.2d 162 (1939); *see also Cook v. 1031 Exchange Corp.,* 29 Va. Cir. 302 (1992).

**20.** *Avtec Sys. v. Peiffer,* 805 F.Supp. 1312, 1321 (E.D.Va.1992); *see Owen v. Shelton,* 221 Va. 1051, 277 S.E.2d 189, 191 (1981) (duty on fiduciary to inform the principal about anything that "might affect the principal's decision whether and how to act").

**21.** Defendant argues that he cannot be held personally liable for the debt because he did not participate either in the preparation of

## III.

Accordingly, on the existing record, plaintiff's motion for summary judgment must be denied.

An appropriate Order will issue.

tickets sold to customers or in the preparation or the submission of misleading or inaccurate sales reports. Moreover, he contends that he reasonably relied on Price's statements during his regular meetings with her that the weekly sales reports filed with plaintiff were accurate. In response, plaintiff contends that defendant's reliance on Price's statements and defendant's response to the concerns she raised was neither in good faith, nor reasonable.