**J.H. SCOTT, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A. 3:01CV177.**

United States District Court, E.D. Virginia, Richmond Division.

Feb. 28, 2002.

Ronald D. Aucutt, McGuireWoods LLP, McLean, for plaintiff.

Craig Dennis Bell, McGuireWoods LLP, Richmond, for pla represented by Bell.

Tara Louise Casey, U.S. Attorney's Office, Richmond, for defendant.

Darren David Farfante, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

Elizabeth Butterworth Stutts, McGuire-Woods LLP, Richmond, for plaintiff.

James J. Wilkinson, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

## MEMORANDUM OPINION

LOWE, United States Magistrate Judge.

John Stuart Bryant, a resident of the City of Richmond, Virginia, died in 1945. Under the terms of his will, probated in the Circuit Court for the City of Richmond, Virginia, Bryant created a trust providing for income to certain beneficiaries, sequentially, with a remainder to others. The current beneficiaries are the fourth generation of income recipients. The trustees, who have no experience in managing large amounts of assets, are all individuals who would not serve in that capacity unless the services of a financial advisor were available to assist in financial planning for the trust. The trustees are authorized to invade principal if, in their discretion, it is necessary to meet the needs of the income beneficiaries.

Plaintiffs are the trustees and the income beneficiaries of the trust. For a number of years, the trust retained the services of a financial advisor to assist in financial planning. The trust deducted the full amount of the fees in 1996 and 1997 when computing federal income taxes. Following an audit, the Internal Revenue Service (IRS) held that the fees should have been treated as a "miscellaneous itemized deduction" and subjected to the two percent limitation provided in 26 U.S.C. § 67(a), (b) ("2% Rule"). As a result, the IRS assessed, and the trust paid, additional taxes due. Plaintiffs bring the current action seeking a refund of those taxes. Jurisdiction is appropriate pursuant to 26 U.S.C. § 7422 and 28 U.S.C. §§ 636(c) and 1346(a)(1). The matter is before the Court on cross motions for summary judgment.

The sole issue before the Court is whether the Plaintiffs (the trustees and the income beneficiaries) are entitled to deduct the full amount of fees paid to financial advisors from trust income for federal income tax purposes.[1] The IRS asserts that the fees are subject to the 2% Rule,[2] relying on *Mellon Bank, N.A. v. United States*, 265 F.3d 1275 (Fed.Cir. 2001). The Plaintiffs assert the fees are fully deductible under 26 U.S.C. § 67(e), citing to *O'Neill v. Commissioner*, 994 F.2d 302 (6th Cir.1993).

Section 67(e) provides:

---

1. Plaintiffs bring this action seeking a federal income tax refund claiming they overpaid taxes for the years 1996 and 1997 because the Internal Revenue Service would not allow a 100% deduction for fees paid to an investment advisor.

2. Ordinarily miscellaneous deduction are deductible only to the extent they exceed 2% of a taxpayer's adjusted gross income. *See* 26 U.S.C. § 67(a).

(e) Determination of adjusted gross income in case of estates and trusts. For the purpose of this section, the adjusted gross income of an estate or trust shall be computed in the same manner as an individual, except that

(1) the deductions for costs which are paid or incurred in connection with the administration of the estate or trust and which would not have been incurred if the property were not held in such trust or estate

\* \* \* \* \* \*

shall be treated as allowable in arriving at adjusted gross income.

26 U.S.C. § 67(e).

In *O'Neill,* co-trustees of a trust lacked expertise in the investment of large sums of money. Without the assistance of a financial advisor, they would not have been willing to serve as trustees. They engaged a financial advisor and deducted the full amount of the fees paid on the trust income tax return. In a subsequent audit, the IRS allowed the deduction only to the extent that it exceeded 2% of the trust income. The trustees appealed to the Tax Court, which sustained the Commissioner's ruling, holding that only costs which are unique to the administration of a trust may be deducted without application of the 2% Rule. The trustee appealed directly to the United States Court of Appeals for the Sixth Circuit. That court stressed, "A trustee is charged with the responsibility to invest and manage trust assets as 'a prudent investor would manage his own assets.'" 994 F.2d at 303. The Sixth Circuit agreed that under § 67(e), costs must be "unique" to the administration of the trust to be fully deductible. However, because of the "prudent investor" rule applicable uniquely to fiduciaries, the court held that trustees were required to consult with a financial advisor to meet their obligation to manage the trust assets in accordance with the "prudent investor" standard, an obligation not imposed on an individual investor. The court recognized that individual investors routinely seek and pay for investment advice, but "they are not *required* to consult advisors and suffer no penalties or potential liability if they act negligently for themselves. Therefore, fiduciaries uniquely occupy a position of trust for others and have an obligation to the beneficiaries to exercise proper skill and care with assets to the trust." 994 F.2d at 304 (emphasis in original).

In the *Mellon Bank* case, the bank, acting as a trustee, sought a refund based on a deduction for fees paid to accountants, tax preparers and financial advisors, who had rendered services in administering the trust. The court held that such fees did not qualify for the 100% deduction under § 67(e). The court explained:

The second clause of section 67(e)(1) serves as a filter, allowing a full deduction only if such fees are costs that "would not have been incurred if the property were not held in such trust or estate." The requirement focuses not on the relationship between the trust and costs, but the type of costs, and whether those costs would have been incurred even if the assets were not held in trust. Therefore the second requirement treats as fully deductible only those trust-related administrative expenses that are unique to the administration of a trust and not customarily incurred outside of trusts.

Investment advice and management fees are commonly incurred outside of trusts. *An individual taxpayer, not bound by a fiduciary duty, is likely to incur these expenses when managing a large sum of money.* Therefore, those costs are not exempt under section 67(e)(1) and are required to meet the two percent floor of section 67(a).

265 F.3d at 1280–81 (emphasis added). Thus, the court focused not on the need for a trustee to fulfill a fiduciary duty, but solely on whether the type of cost was different from the same type of cost incurred by an individual taxpayer administering a large sum of money.

Plaintiffs in the current case have urged the Court to reject the reasoning of *Mellon Bank,* and to follow the holding in *O'Neill.* Not surprisingly, the United States takes the contrary position. Here it is unnecessary to elect which precedent to follow, because, unlike the trustees in *O'Neill,* the Plaintiffs here cannot show that the trustees are *required* to seek investment advice in order to fulfill the fiduciary duties imposed by law.

In Virginia, the duties a fiduciary owed to beneficiaries in managing investments in 1996 and 1997 are set forth in Va.Code § 26–45.1 of 1992. The statute requires a fiduciary:

> ... shall exercise the judgment of care, skill, prudence and diligence under the circumstances prevailing from time to time, (including, but not limited to, general economic conditions, anticipated tax consequences, the duties of the fiduciary and the interests of all beneficiaries) that a prudent person familiar with such matters and acting in his own behalf would exercise under the circumstances in order to accomplish the purposes set forth in the controlling document. In investing pursuant to this standard, a fiduciary shall consider individual investments in the context of the investment portfolio as a whole and as part of the overall investment plan and shall have a duty to diversify investments unless, under the circumstances, it is prudent not

to do so. Any determination of liability for investment performance shall consider not only the performance of a particular investment, but also the performance of the portfolio as a whole.

Va.Code Ann. § 26–45.1 (Michie 1992). Section 26–45.1 specifically excepts from liability fiduciaries who acquire, invest, exchange, retain, sell, or manage "... the securities described in § 26–40.01 and ... those investments authorized by § 26–40...." *Id.* Section 26–40 sets forth a list of stocks, bonds and securities in which a fiduciary may invest and that such investments "shall be conclusively presumed to have been prudent." Va.Code Ann. § 26–40 (Michie 1992). Section 26–40.01.B stresses that a fiduciary's immunity is limited by providing: "[E]xcept as provided in § 26–40, fiduciaries, whether individual or corporate, shall be conclusively presumed to have been prudent in investing funds held by them in a fiduciary capacity in only the following securities ...." Va.Code Ann. § 40.01.B (Michie 1992).

Thus, Virginia is one of the very few states, if not the only, that affords a fiduciary, whether individual or corporate, absolute immunity from claims that it did not follow the "prudent investor" rule in managing trust assets, provided the fiduciary invests in the assets specified by statute. *See* Va.Code Ann. §§ 26–40, 26–40.01 (Michie 1992). The Supreme Court of Virginia has decided three cases in which it discussed the predecessor to what is now § 26–40. While none of the decisions involved a suit against a trustee who had complied with the statute, the court made clear that the statute provides complete immunity to a trustee who chooses to invest in one of the statutorily approved investments.[3]

---

**3.** The earliest case, *Koteen v. Bickers,* 163 Va. 676, 177 S.E. 904 (1934), involved a suit by legatees under the will of Solomon Baer against the executor of the estate and his surety for alleged improprieties in handling assets. Koteen as executor loaned one Good-

man $11,000.00, taking back a note and mortgage on a piece of property then assessed for tax purposes at $7,740.00. The court rejected the argument that the executor should be liable for the difference realized on the fore-

Thus, unlike the situation in *O'Neill*, a trustee in Virginia is not *required* to consult a financial advisor to fulfill his statutory obligations.[4] As unfair as it may prove to be to the beneficiaries, a trustee in Virginia may arbitrarily decide to invest one hundred percent of the assets of a trust in United States Saving Bonds and he will be deemed to have met the "prudent investor" standard. *See* Va.Code § 26–40.01.B.2.

The Plaintiffs argue, however, that a fiduciary in Virginia owes a duty of "impartiality" over and above the "prudent investor" rule. It is the duty of "impartiality" that requires a fiduciary in Virginia to consult a financial advisor. Specifically Plaintiffs assert that a trustee of a multi-generational trust must take into consideration the various classes of beneficiaries and their rights. For example, a trustee must always balance the need to produce income for the current beneficiary with the need to preserve the value of principal, especially when inflation is at work. To avoid liability for a violation of this duty of "impartiality," they argue, a trustee must consult a financial advisor to assure a

---

closure and the amount of the loan because the investment was not one approved under Va.Code § 5431 (the predecessor to the current statute). The court stated:

> Under Code, section 5431, as amended by Acts 1928, chapter 427, trustees may invest in first lien mortgages not to exceed eighty per centum, now sixty per centum, of the fair market value of real estate securing them. But this is not mandatory. All that statute means to say is that the trustee shall be relieved from liability if he does make such an investment.

177 S. E. at 909.

The court next mentioned the immunity afforded fiduciaries in *Powers v. Powers*, 174 Va. 164, 3 S.E.2d 162 (1939). In that case the fiduciary relationship was one of guardian and ward. The ward filed exceptions to the final settlement of the guardian claiming negligence in managing his assets. The guardian had placed $820.12 in a time certificate of deposit at the Dickenson County Bank. In addition, the guardian left $661.71 in a savings account in the same bank. The Bank failed, and the ward argued that the guardian had mismanaged the assets. Unsecured bank deposits were not among the investments approved by statute. The court ultimately held that it was the ward's burden to prove that the guardian had failed to act as a reasonably prudent man in handling the assets. Again, the court alluded to the predecessor to § 26–40, observing:

> Judge Harrison in his work, Wills and Administration, Vol. 1, page 702 says: "the statute of Virginia furnishes immunity to the Virginia fiduciary who invests according to the provisions of the statute, and the reasons for departing therefrom should be very urgent, although, as heretofore pointed out, the statute is altogether permissive."

3 S.E.2d at 166.

The last case, *Buckle v. Marshall*, 176 Va. 139, 10 S.E.2d 506 (1940), involved a suit against an administrator, c.t.a., d.b.n of the estate of Bethnia Pannill Martin to hold him personally liable for losses incurred through investments of the assets of the estate. Once again, it does not appear that any of the assets were of a type specified under the predecessor to § 26–40. Once again, however, the Supreme Court of Virginia specifically described the statute as "a statute furnishing immunity to those who invest according to the provisions of the statute ...." *Id.* at 512.

The dearth of cases interpreting Va.Code §§ 26–40 and 26–40.01 as they apply to § 26–45.1 makes clear that the statutory language is so plain and unambiguous that no judicial analysis is needed to conclude that a fiduciary who invests in a "listed" security is exempt from the liability otherwise imposed by § 26–45.

**4.** The court in *O'Neill* observed that Ohio had a statutory list of securities in which a fiduciary might invest, but went on to observe: "[t]he mere selection of an approved investment does not automatically meet the prudent investor standard." *O'Neill v. Commissioner*, 994 F.2d 302, 303 (6th Cir.1993). Indeed, the Ohio statutes, Ohio Rev.Code §§ 2109.37, 2109.371 and 2109.372, reference various securities in which a fiduciary is *authorized* to invest, but there is no language providing a fiduciary *immunity* if he invests in a listed security.

proper balance between producing income and preserving assets.

The standard of care set out in Va.Code § 26–45.1 specifically includes the duty to consider the interests of *"all* beneficiaries" in making investment decisions. *Ibid; see Sturgis v. Stinson,* 241 Va. 531, 404 S.E.2d 56, 60 (1991) (in determining whether to sell unproductive real estate to provide income producing assets for successive beneficiaries, a trustee is subject to the provisions of § 26–45.1). In short, the "prudent investor" rule espoused in § 26–45.1 necessarily incorporates the duty of impartiality toward *all* beneficiaries when making investment decisions. Thus, the immunity provided a fiduciary by §§ 26–40 and 26–40.01 is applicable to trustees even in multi-generational trusts. Accordingly, a trustee in Virginia is not *required* to consult financial advisor and will suffer no penalties or potential liability for mismanagement of trust assets so long as he invests in one of the securities listed in Va.Code § 40.01. It may very well be that such investments will prevent the growth of principal. Indeed, the real value of principal will likely be reduced because of inflation, to the detriment of the residual beneficiaries. But, unless the legislature amends or repeals §§ 26–40 and 26–40.01, the beneficiaries have no recourse.

Because of Virginia's unique fiduciary investment statutes, a trustee may choose to invest in assets not listed in §§ 26–40.01 and 26–40 in which case he will have fulfilled his statutory fiduciary duties. The assets of the estate may suffer substantial depreciation if he does so, but the situation is no different than what would exist if a private individual invested in identical assets. In both cases, the parties involved would probably be better served by consulting with a financial advisor, but unlike the situation in *O'Neill,* nothing in the law *requires* either to do so. If a trustee elects to hire a financial consultant to assist in financial planning for the trust, he is doing nothing different than what an individual investor might do. A trust's "need" to incur the costs of a financial advisor is no different than the "need" of an individual. Both "needs" spring from the same desire, i.e. to increase profitability. Here, the Plaintiffs have established that the trust incurred costs for investment advice in order to preserve principal and income. Accordingly, it was entitled to a deduction under 26 U.S.C. § 67(a). What they have not shown is that those same expenses would not have been incurred but for the fact that property was held in trust.

Accordingly the Defendant's Motion for Summary Judgment will be GRANTED. Plaintiffs' motions for an extension of time and to exceed the page limitation will be GRANTED. Defendant's motions to strike will be DENIED. Plaintiffs' motion for summary judgment will be DENIED. Defendant's motion in limine will be DENIED. The Clerk of Court is DIRECTED to send a copy of the Memorandum Opinion and the accompanying Order to all counsel of record.

### ORDER

In accordance with the accompanying Memorandum Opinion, it is ORDERED that:

1. Defendant's motion for summary judgment is GRANTED;

2. Plaintiffs' motions for an extension of time and to exceed the page limitation are GRANTED;

3. Defendant's motions to strike are DENIED;

4. Plaintiffs' motion for summary judgment is DENIED;

5. Defendant's motion in limine is DENIED; and

6. Plaintiffs' action is DISMISSED.

Plaintiffs may appeal the decision of the Court. Should they wish to do so, written notice of appeal must be filed with the Clerk of the Court within sixty (60) days of the date of entry hereof.

Let the Clerk send a copy of the Order and accompanying Memorandum Opinion to all counsel of record.

And it is so ORDERED.